# CASES

## ARGUED AND DETERMINED

### IN

# THE SUPREME COURT

#### OF THE

## STATE OF KANSAS

DURING THE TERM COMMENCING JULY, 1863.

STATE OF KANSAS *ex. rel.* GEORGE A. CRAWFORD *vs.* CHARLES ROBINSON *et. al.*, constituting the Board of State Canvassers, *·respondents.*

### Motion for writ of Mandamus.

Section 1 of Article 1 of the Constitution of this State provides that the officers of the Executive Department " shall be chosen by the electors of the State at the time and place of voting for members of the Legislature, and shall hold their offices for the term of two years from the second Monday in January next after their election, and until their successors are elected and qualified." " Members of the Legislature," as here used, *held* to include the members of *both* branches of the Legislature. The executive officers can only be chosen at an election in which are chosen members of the House of Representatives and of the Senate.

The executive officers, elected on the first Tuesday of December, A. D. 1859, hold their offices until the second Monday of January, A. D. 1862, and *until their successors are duly elected and qualified.*

The limitation of the term of office of the Governor, provided in the Schedule to the Constitution, applies to the term of the first Governor elected under the Constitution. His successor must be chosen "at the time and place of voting for the members of the Legislature." ·

The Constitution does not fix the date of the commencement of the term of office of the members of the Legislature. The power to fix this date *held* to be within the province of the Legislature.

The statute, approved May 22d, 1861, entitled "An act to provide for the election of State, district and county officers, Senators and members of the House of Representatives," &c., provides that members of the House of Representatives shall be elected at the general election in 1861, and annually thereafter, and

2

members of the Senate at the same election in 1862, and every second year thereafter.

In thus fixing the year 1862 as the time for electing members of both branches of the Legislature, that time is *held* to be the one prescribed for the election of the second Governor of Kansas.

A statute will not be declared unconstitutional, unless its infringement of the superior law is clear, beyond substantial doubt. The provision of the act approved May 22d, 1861, for the election of Governor in 1862, *held*, valid, and the election of Governor in 1861 *determined* to be illegal.

The facts of the case are stated in the opinion of the Court.

*Crozier, Stinson and Johnson*, for relator.

*Shannon, Lowman and Holeman*, for respondents submitted

I. The law presumes that the Board of Canvassers, under the election laws, meeting to canvass the returns of an election, know what officers are to be elected by such vote, and they will rightfully only canvass the votes for such officers. They are not, by law, authorized to canvass votes for other officers.

II. There was no law authorizing an election of Governor in the fall of 1861.

1. The law of the State, fixing the time of the election of the first Governor of the State under and in conformity with the Constitution in the fall of 1862, is a virtual prohibition of the election of such officer at an earlier period.

2. The provisions of section one of article one of the Constitution, that State officers shall hold their offices from the second Monday in January, next after their election, applies only to elections held under the Constitution, as provided in article four, section two.

III. The election of December 20th, 1859, was not held under the Constitution, because

1. It was not held on the day provided in the Constitution. (*Art.* 4, § 2.)

2. The votes cast were not those of the electors of the State, but of the registered voters of the Territory.

3. The returns were not made to the Secretary of State.

4. They were not canvassed by State officers but by Territorial.

5. The Constitution was not then in force.

IV. The election was held under the Schedule, which is no part of the Constitution. The officers, so elected, are *provisional officers.*

V. The time when the State would be admitted into the Union being uncertain, no definite day could be fixed from which the persons elected. at such election should hold their offices; hence the Schedule provides that they should hold from the time of the admission of the State into the Union. *Sched. to Const.* §§ 3, 4, 7, 23.

VI. The Constitution has evidently made the second Monday of January the beginning of the political year.

VII. Senators and State officers hold their offices for two years. It is evident the Constitution intended they should always be elected on the same day. 4 *Peters (Cond.)* 714.

From these propositions it follows that section one of article one of the Constitution does not and cannot apply to the persons elected at the election held on the first Tuesday in December, 1859.

The opposite construction creates inconveniences, and involves consequences absolutely absurd, as, for example :

1. It requires a Governor to hold his office under the Constitution for more than a year before the Constitution had force.

2. It makes him Governor of the State of Kansas for more than a year before there was such a State.

3. It requires him to convene the Legislature when there is no Legislature, and no means of providing one. *Art. 2,* § 2.

4. It renders void all the acts of the last Legislature.

5. It drives Judge Bailey from this bench forthwith, and would dissolve this Court.

State of Kansas *ex. rel.* Crawford *v.* Robinson and others.

A construction, involving such consequences, cannot be a sound one. 1 *Story Const.* §§ 400, 401, 455.

In any case this construction is, at least, doubtful; and, therefore, the construction made by the Legislature, at its last session, should not be disturbed. 1 *Story Const.* § 406.

By the Court, EWING, C. J. The relator, George A. Crawford, has shown the Court, *prima facie*, by affidavit, that, at the general election in 1861, votes were cast for him for the office of Governor at most of the election districts in this State, in conformity with the provisions of the law regulating the mode of conducting elections, approved May 23d, 1861, and that he received a majority of all the votes then cast in the State for that office, and that returns of the votes so cast were duly made by the proper officers of the several counties to the defendants, the Board of State Canvassers, who have neglected, and still neglect, to canvass the same and announce the result; and he asks the Court to compel the board, by writ of mandamus, to canvass the votes so returned, and to determine and certify, in the manner prescribed by law, what person has been elected to the office of Governor. Upon this showing, the Court will grant an alternative writ of mandamus, if the year 1861 was the year prescribed by the Constitution or the laws of the State for electing a Governor.

The only statute, fixing the year for choosing that officer, is that approved May 22d, 1861, entitled "An act to provide for the election of State, district and county officers, Senators, members of the House of Representatives," &c., which provides for the election of a Governor at the general election in 1862, and each second year thereafter.

If this provision of the law is valid, the relator is not entitled to the office, by virtue of an election held in 1861. Otherwise, as the Constitution provides that the Governor shall hold office for two years from the second Monday in

State of Kansas *ex. rel.* Crawford *v.* Robinson and others.

January, next after his election, the relator would be entitled to the office for two years from the second Monday in January, 1862; while he who might be chosen Governor at the general election in 1862, under the election law, would also have a right to the office for two years from the second Monday in January, 1863, giving the State two Governors for the year 1863, and thereafter so long as the Constitution and law remains the same, and the successors to the two Governors be regularly chosen. The constitutionality of that provision of the election law, above referred to, is therefore necessarily involved in the issue, and must be determined.

The only provision of the Constitution with which it could be held to conflict, is the first section of the first article, as follows: "The executive department shall consist of a Governor, Lieutenant Governor, Secretary of State, Auditor, Treasurer, Attorney General, and Superintendent of Public Instruction, who shall be chosen by the electors of the State at the time and place of voting for members of the Legislature, and shall hold their offices for the term of two years from the second Monday in January, next after their election, and until their successors are elected and qualified."

It is argued, by counsel for defendants, that the foregoing section has no application to the officers chosen under that article of the Constitution, termed the Schedule, because they were not chosen by "the electors of the State," but by the electors of the Territory of Kansas. To our minds, the argument is not convincing. The Schedule refers to the officers of the executive department only to provide a special election for those officers on the first Tuesday of December, 1859, and to make it the duty of the Governor elect, on the admission of the State into the Union, to take steps for the immediate organization of the State government. As soon as the first Governor was elected, and the government put in motion, these clauses of the Schedule were obsolete, and the general provisions of the Constitution, and these alone, de-

fined the duties, powers, qualifications and term of office of the first Governor. His office is different from that of any one of his successors only in the mode of its inception and in the special duty imposed on it of organizing the government. The Schedule, by making special provision for his election, takes him out of the operation of the first section of the first article only as to *the mode* of his election. We are clearly of the opinion that the limitation of the term of office, in the article above quoted, applies to the term of the first Governor; and that, as he was elected on the first Tuesday of December, 1859, he is entitled to hold only until the second Monday of January, 1862, *and until his successor is duly elected and qualified.*

We search the Constitution in vain for any provision fixing *directly* the time for choosing the successors to the first Governor. The article under consideration fixes the time, *indirectly*, though plainly, by providing that, after the first election, they shall be chosen *"at the time and place of voting for members of the Legislature."*

Counsel for relator maintain that this provision is satisfied if the Governor be chosen at the time and place of voting for members of *one branch* of the Legislature. In our opinion, that construction is inadmissible. In the Constitution, wherever the members of only one branch of the Legislature are referred to, they are termed "members of the Senate" or "members of the House of Representatives;" while the expression, "members of the Legislature," is uniformly used to mean the persons composing *both* the Senate and the House.

The fact that the article "*the*" is not inserted before the words "members of the Legislature," in the first section of the first article, is not worthy the weight attached to it in argument. Its presence would make that meaning transparent, which its absence but slightly obscures. The framers of the Constitution, in omitting it, merely sacrificed a little of clearness for a little of brevity. We notice a like omission in the

Schedule, Section 11 : \* \* \* \* \* \* "There shall. be an election held in the several voting precincts on the first Tuesday of December,.A. D. 1859, for the election of *members of the first Legislature.*" We can see no reason for attaching to the expression, "members of the Legislature," in the first section of the first article, any meaning other than that it necessarily bears wheresoever else it occurs in the Constitution.

It is erroneously argued that this requirement—that the Governor shall be chosen at the time and place of voting for members of the Legislature—is intended merely as a mode of providing that he shall be chosen at a general election. The error of this argument becomes apparent on its being ascertained that the Constitution does not expressly provide that the members of the Legislature shall be chosen at a general election. It is, perhaps, true that they *are* to be chosen at a general election; but that is not by force of direct provision, but an inference from the character of their office, which applies at least.as strongly to the Governor as to them. It would be an absurdly circuitous mode of 'providing that the Governor shall be chosen at a general election, to say that he shall be chosen at the time and place of voting for members of the Legislature, when there is no provision that *they* shall be elected at a general election, other than that which is as applicable to the Governor as to them. The words, "who shall be chosen at the time and place of voting for members of the Legislature," add no strength to the inference that the Governor is to be chosen at a general election, and might be stricken out without affecting it. These words, therefore, mean *nothing*, or *something.else* than that the officers of the executive department shall be chosen at a general election; and there is nothing else they *can* mean but that those officers shall be elected at the time and place all the members of both branches of the Legislature are elected.

The Constitutions of the other States, with few exceptions, provide that at each election for Governor, the members of

both branches of the Legislature shall also be chosen. This similarity of constitutional provision is the result, not of chance, but of a wise purpose, common to the framers of the several constitutions, to give to each Governor the co-operation of a Legislature chosen at the same time and on the same issues with himself; thus tending to produce harmony of action between the Executive and the Legislature, and to make the laws promptly responsive to the voice of the people.

Such being the purpose and meaning of the provision in question, it is necessary to ascertain whether the year 1861 was the year prescribed by the Constitution or by law for the regular election of all the members of both branches of the Legislature, for we will thereby ascertain whether it was the year prescribed for choosing a Governor.

Section second, article second, provides that "The first House of Representatives shall consist of seventy-five members, who shall be chosen for one year. The first Senate shall consist of twenty-five members, who shall be chosen for two years." If this section were construed by itself, the best interpretation would be that the term of the members of one house would be one year, and of the other, two years, from the date when they were declared elected; while, when considered in connection with section first, article first, the interpretation might be that their terms commenced the second Monday in January, next after their election.

When considered in connection with other parts of the Constitution, however, neither of these constructions can be given to the clause in question. Section eleven of the Schedule provides for the election of "members of the *first Legislature*" on the first Tuesday of December, A. D. 1859. That it was intended the persons then chosen should constitute the first Legislature assembled under the Constitution is clear, from the language of the Schedule above quoted, from the fact that no provision is made for the choice of successors in case the admission of the State should be delayed longer than the

terms of one and two years; and from the further fact that special duties are imposed on the first Legislature when assembled. For example: Section first, article tenth, provides that "it shall be the duty of the first Legislature to make an apportionment;" and section eighth, article ninth, that "the first Legislature, under this Constitution, shall provide by law for submitting the question of the permanent location of the Capitol to a popular vote;" and section second, article second, "*The first House of Representatives* shall consist of seventy-five members, who shall be chosen for one year; the first Senate shall consist of twenty-five members, who shall be chosen for two years. *After the first election,* the number of Senators and Representatives shall be regulated by law." To our minds it is apparent, from these clauses, that the persons chosen on the first Tuesday of December, 1859, and called by the Schedule "members of the first Legislature," were entitled to compose the first Legislature, assembled to make laws under the Constitution, whensoever the State might be admitted into the Union. Yet, if it be held that the Constitution provides that the terms of members of the Legislature began when they were declared elected, or on the second Monday in January next after their election, then the terms of members of the first House expired before the admission of the State; and the clauses above quoted, imposing special duties on the first Legislature were void for want of the operative existence of one branch of that body; for, unlike the officers of the executive department, the members of the Legislature may not continue in office beyond the regular measure of their terms, and until their successors are elected and qualified.

There are no provisions in the Constitution that can possibly be construed as fixing a date for the commencement of the terms of members of the Legislature, execpt section second, article second, and section first, article first, above referred to. From those sections, no date for that commence-

ment can be inferred, except the date when the members are declared elected, or the second Monday in January next after their election; both which, resting as they do on inferences, not *necessarily* to be drawn from the text, must be rejected as irreconcilable with other express provisions of the Constitution. Hence, as no date is fixed in that instrument from which those terms begin, and as the whole subject is within the defined powers of the Legislature, it was competent for that body to fix it. This was done in effect by that clause of the law above referred to, entitled "An act to provide for the election of State, district and county officers, Senators, members of the House of Representatives," &c., which provides for the election of members of the House of Representatives at the general election in 1861, and annually thereafter; and of members of the Senate at the same election in 1862, and every second year thereafter. And as the officers of the executive department are to be chosen at the time of voting for members of both branches of the Legislature, it follows that 1862, and not 1861, is the year prescribed for electing the second Governor of Kansas.

It was argued by counsel that although the Governor is entitled to hold until his successor is elected and qualified, yet, as his term is measured by two years from the second Monday in January, next after his election, it is implied that his successor shall be chosen at the general election next preceding the expiration of the two years. We would not be disposed to question the existence of such implied provision, if the words, "who shall be chosen at the time and place of voting for members of the Legislature," were omitted from the section; but, in presence of these controlling words, coupled with the clauses affecting the term of members of the first Legislature, such implied provision can not reasonably be claimed to exist.

We are sensible of some difficulties attending the construction we have given the provisions bearing on this case. It

State of Kansas *ex. rel.* Crawford *v.* Robinson and others.

is doubtful whether any uniform construction could be given the clauses of the Constitution, relating to the commencement and duration of terms of the first officers and the election of their successors, which would not conflict with the letter or spirit of some one of those clauses. Though regarded separately, those provisions are exceedingly well framed and finished; considered together, they are somewhat incongruous; and we are glad to be convinced that the construction given them by the Legislature, as embodied in the law we have been considering, is the most harmonious and consistent that can be given them.

It has been repeatedly held, by the Supreme Court of nearly all the States of the Union, that no statute should be declared unconstitutional, unless its infringement of the superior law is clear, beyond substantial doubt. The reason of the rule is, that when laws have gone into effect and been acted upon by the people and by departments of the Government, it is generally hurtful to the interests of society to have them expunged by judicial decision. The reason which has established this rule is of special force in the case before us; for it would be difficult, if not impossible, to support a decision against the law in question by reasoning which would not shake the tenure of other officers than those of the executive department, and involve in doubt and dispute many official acts. Confined in our conclusion to this salutary rule of interpretation, we hold that the provision of the act approved 22d May, 1861, for the election of Governor in 1862, is valid; and, therefore, that the election for Governor in 1861 was illegal.

The motion is overruled, at the costs of relator.