THE BOARD OF COMMISSIONERS OF WYANDOTTE COUNTY
*et al.* v. DANIEL ABBOTT.

INVALID STATUTE — *Improvement of County Roads.* Chapter 214, Laws of 1887, providing for the improvement of county roads, is unconstitutional, and therefore cannot have any operation, because in conflict with the provisions of the constitution of the state.

*Error from Wyandotte Court of Common Pleas.*

THIS action was originally brought by *Daniel Abbott,* under § 253 of the code, against the *Board of County Commissioners* and others, to enjoin the collection of certain taxes levied by special assessments upon Abbott's farm, under the provisions of chapter 214 of the Laws of 1887, entitled "An act providing for the improvement of county roads." On March 16, 1891, this case was transferred from the district court of Wyandotte county to the court of common pleas of that county. On July 15, 1892, a stipulation was filed in the case wherein it was agreed:

"1. That Daniel Abbott was the owner of the southeast quarter of section 34, township 11, range 25, less 18 acres known as 'Lancaster Heights;' also the east half of the southwest quarter of southeast quarter of section 34, township 11, range 25, all lying within one-half mile of the road known as the 'Abbott road.'

"2. That a petition was presented to the board of county

commissioners, praying for the making of certain improvements on the Abbott road, in accordance with and under authority of chapter 214 of the Laws of 1887.·

"3. That commissioners were appointed, who caused the road to be improved.

"4. That the commissioners apportioned two-thirds of the cost of the improvements upon all the lands lying within one-half mile of said road, including the Abbott land above mentioned, and the county commissioners and others have placed the same on the duplicate tax rolls as a tax against the land, and have entered the remaining one-third as a general tax upon all the lands in the county, and will collect the same unless restrained."

Upon the agreed statement of facts, the court below, on the 10th day of September, 1892, found for Daniel Abbott, and against each and all of the defendants below, that the act under which the improvements mentioned in the petition were made is unconstitutional and void, and thereupon adjudged that the temporary injunction theretofore granted be made perpetual. The board of county commissioners and others excepted, and bring the case here.

*McGrew & Watson*, and *Morse, King & Morse*, for plaintiffs in error:

Does chapter 214, Laws of 1887, seek to confer legislative power on the petitioners and give them the right to cause taxes to be levied? We insist not. *Comm'rs of Stafford Co. v. The State, ex rel.*, 40 Kas. 25.

No improvements of the nature of these contemplated in this statute could be made by the county commissioners prior to the passage of this road-improvement law. And that law is simply directory. It points out the means by which these improvements are to be made; and it makes it the business of the county commissioners (not other officers) to make the improvements, if any shall be made. The board had, and still has, no power within itself to cause a road to be improved. The petition is addressed to its discretion as a court. Without this petition the board can do nothing; with it, it

can act.  The majority of the resident landholders ask, they do not demand; they request, they do not command.  If the theory of gentlemen who contend for the unconstitutionality of the law is correct, these resident landholders simply command the board to perform certain acts.  There was certainly no such intention in the legislative mind.

"Statutes directing the mode of proceeding by public officers are directory, and are not regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statute." Cooley, Const. Lim. 75, 77, 78; *People v. Cook*, 14 Barb. 290; 7 Hill, 19; 8 Mich. 271.

No road improvement can be made unless by virtue of some form of proceeding prescribed by the legislature therefor. The board cannot make improvements without the petition of the resident landholders being first presented to it.  The resident landholders cannot procure the improvement in any other way than by a petition to the board.  The legislature never intended to confer on any class of people the power of taxation, and did not confer any such power.  It simply gave to the majority of the resident landholders the right to proceed in a certain manner in order to secure the improvements of certain roads along the lands of the petitioners.  It is idle to talk of any power vested in the petitioners to levy taxes, either special or general.  The petitioners can exercise their privilege of doing certain acts as specified in the second section of the road law in question, and if these acts shall result in the improvement of the road as asked, then the taxes follow as an incident.  It is not the petitioners who levy them; they have nothing to do with the levy whatever; they shall do certain things as provided in § 2 of chapter 214.

One objection urged to this law is, that it is unconstitutional because it does not provide "a uniform rate of assessment and taxation."

"There is no imperative requirement that taxation shall be equal.  If there were, the operations of government must come to a stop, from the absolute impossibility of fulfilling it.  The most casual attention to the nature and operation of

taxes will put this beyond question. No single tax can be apportioned so as to be exactly just, and any combination of taxes is likely in individual cases to increase instead of diminish the inequality. Theoretically, tax laws should be framed with a view to apportioning the burdens of government so that each person enjoying government protection shall be required to contribute so much as is his reasonable proportion, and no more. The tax law that comes nearest to accomplishing this is, in theory, the most perfect." Cooley, Tax. (2d ed.) 164. See, also, Cooley, Tax. (2d ed.) 153, 156; *Comm'rs of Ottawa Co. v. Nelson*, 19 Kas. 234.

Objection is made to the provision of this road-improvement law because of the possible multiplicity of taxing districts. It is urged that a road of any considerable length may be divided into an indefinite number of taxing districts, and that the law is objectionable because taxes cannot thus be uniform. To our minds, this should, more than any other feature, commend the law, because of its equitable provisions in regard to the burdens of taxation. Thus, the small district, that by reason of natural advantages requires but little work to make these improvements, should impose but small taxes upon the residents thereof, while those sections whose natural conditions were against the residents thereof should pay more for the greater work necessary. There certainly can be no injustice in this. Cooley, Tax. (2d. ed.) 149–151; Cooley, Const. Lim. 495–497.

It is urged that this road-improvement law is unconstituional because it is in violation of the letter and spirit of our fundamental law, which declares that private property shall not be taken for public use without just compensation. How any violence can be done to the wholesome protection which this section gives to the citizen, by simply taxing the citizen's land for certain benefits conferred upon him, is not clear. It is urged in support of this supposed violation, that to impose special assessments upon property which is not especially benefited is to appropriate private property to public use without compensation. But this law proposes to do no such thing. It supposes (and we insist very reasonably) that every prop-

erty owner in the county is benefited by an improved road through the county. And those living nearest the improvement are benefited more than those living more remote. It does not take, nor seek to take, private property for public use without due compensation. *Gorden v. Cornes*, 47 N. Y. 608; 19 Pa. St. 258, 261; 24 Wend. 65.

Another objection is made because the law allows levying of special assessments upon agricultural lands for the improvement of country roads. Such power has hitherto been confined to cities and towns, for the improvement of streets along which the land is divided into lots, it is alleged. We can see no reason why the law which assesses abutting property for the payment of improvements upon the highway may not be applied to land and country roads as well as to lots and city streets. 77 Ind. 371; Cooley, Tax. 149, 150, and notes. While each improved road greatly enhances the value of the land abutting thereon, it also, in a less marked degree, enhances the value of all the land in the county. While we insist that the legislature has the right to provide for the levying of special assessments limited to the land abutting on the improved road, or to levy such assessment throughout the county generally, we insist, with entire confidence, that it has the power to provide for distribution of these burdens in the way that it has done in the road-improvement law of this state; that the distribution of such burden in the manner herein provided for is in accordance with justice and equity and does no violence to any constitutional requirement or restriction.

*Reed & Reed*, and *Hutchings, Keplinger & Miller*, for defendant in error:

1. The act in question is a delegation of legislative power, and therefore a violation of the constitution of this state. It authorizes a single self-selected resident elector or nonelector, or any greater number who happen to own the required amount of land within the proposed district, to assume the following powers: First, to determine absolutely what or whether any particular county road or portion thereof, to be

selected by themselves, shall be improved at the expense of the county to the extent of one-third of such cost, the same to be raised by general taxation of all of the taxable property in the county; second, to determine absolutely the kind, character, extent and cost of the improvements to be made; third, to determine the location, extent and boundaries of the taxing districts within which two-thirds of the costs of such improvements are to be raised by special assessments; fourth, to determine the time over which such special assessments are to be extended, and to fix a lien upon the property of others for the payment thereof; fifth, to charge upon all personal as well as real property situated within the taxing districts special assessments for street improvements. All these are essentially legislative powers. "The power to determine what shall be the taxing district is purely a legislative power." Cooley, Const. Lim., pp. 110, 111. See, also, *Thompson v. Schermerhorn*, 6 N. Y. 96; Cooley, Tax. 32, *et seq.*

The legislature would not have the power to delegate, even to cities, towns, and villages, the legislative powers which this act confers upon private individuals. By necessary implication, those political bodies could be authorized to exercise, not legislative authority generally, but such limited and special authority as such bodies had been accustomed to exercise. In no event could a city, town or village have the power to compel the making of public improvements at the expense of territory outside of such municipalities. Therefore, even if the legislature had the power to create municipalities other than such as are mentioned in the constitution, and even though it had constituted those taxing districts such municipalities, the act would still be unconstitutional, because it confers upon such corporations power to make public improvements at the expense of the county, without regard to the wishes of the county authorities.

The more fatal objection, however, remains, that the act does not attempt to create any new municipality, but it does delegate important legislative power to individuals within a restricted portion of the county. It authorizes those individ-

uals, in spite of the wishes of the state, the county, and every municipality provided for in the constitution, in spite of the opposition of every elector in the county, to require the making of costly improvements at the expense of the county. That the legislature is without power, in the absence of constitutional authority, to delegate legislative power, see Cooley, Tax. 32, 48, and cases cited; Cooley, Const. Lim. 117, 191; 1 Dill. Mun. Corp. 196; 2 id. 740, 779, and cases cited; Sedg. Const. Law, 647.

The act is revolutionary in theory and mischievous in practice. As stated in Cooley on Constitutional Limitations, (2d ed., 174,) it is not necessary that we point out any specific inhibition in the constitution which has been disregarded, or any express command thereof which has been disobeyed.

2. Even if the act is not in violation of the state constitution, it is in violation of that clause in the federal constitution which requires the federal government to guarantee to every state a republican form of government. We do not wish this point to be overlooked or ignored, as counsel persists in doing.

3. The act is unconstitutional because it does not provide "a uniform and equal rate of assessment and taxation." So far as the special assessment of two-thirds of the cost of the improvement is concerned, the act proceeds upon the theory that the land within the district is specially benefited to the full extent of the special assessment; but the law proceeds to make an invidious distinction between those inside and those outside the taxing districts as to general taxes. By § 8 of the act, those within the district are exempt from the payment of all road taxes. It thus appears that those who pay, in special assessments, the exact measure of special benefits received by them receive a special favor as to other taxes which is not extended to others. See *Fields v. Commissioners*, 36 Ohio St. 476; *National Bank v. Barber*, 24 Kas. 534; *M. & M. Rly. Co. v. Champlin*, 37 id. 682; Cooley, Tax. 152, and cases cited in notes.

4. The act is in violation of § 15 of the bill of rights. We now refer to that portion of the act which provides for the

imposition of special assessments.   Whenever special assessments are imposed in excess of special benefits received, property is taken for public use without compensation, and such taking, though taxation in form, is robbery in fact.   Even if the legislature had fixed the limits of the taxing districts, and had determined upon the nature of the improvements to be made, and had exercised its judgment upon the question as to the measure of the special benefits, it would still be the duty of the court to hold the assessment void if it should clearly appear that the land could not by any possibility receive special benefits.   11 Neb. 37; 14 Pac. Rep. 456.

5.   The legislature cannot impose special assessments, nor can it delegate such power except to "cities, towns, and villages."   But for § 5, article 12, of the constitution, no special assessments could be imposed in this state.   At an early date, in this state, the supreme court, construing the above section, denied the authority of the legislature to confer upon *quasi* corporations, like counties and townships, the power to levy special assessments.   *Hines v. City of Leavenworth,* 3 Kas. 199. See, also, *Updyke v. Wright,* 81 Ill. 49; *Weeks v. Milwaukee,* 10 Wis. 242; *Lumsden v. Cross,* 10 id. 282; *Bond v. Kenosha,* 17 id. 284; *Hale v. Kenosha,* 29 id. 599; *Harford v. Omaha,* 4 Neb. 336, 347; *Hill v. Higdon,* 5 Ohio St. 243; *Reeves v. Treasurer,* 8 id. 333; *Graham v. Conger,* 4 S. W. Rep. 329; *Conger v. Graham,* 11 id. 467; *Washington Avenue,* 63 Pa. St. 352; *Seely v. Pittsburg,* 83 id. 360.

6.   But it may be claimed that the powers in question are merely administrative, and not legislative.   This theory involves still more serious objections.   In the first place, under the authority of *Hines v. City of Leavenworth,* 3 Kas. 199, even the state itself has not the power to impose special assessments.   Again, if these powers are merely administrative, they are the acts of the state.   Not only is it the state that imposes the special assessments, but it is the state that determines that improvements shall be made, and where they shall be made, and what they shall be.   In short, upon the theory suggested, the improvements are made by the state.   That the

legislature itself cannot make or improve roads, is expressly held in *Comm'rs of Leavenworth Co. v. Miller*, 7 Kas. 493. Neither is it in the power of the legislature to compel or authorize any locality to pay for improvements which have been made by the state. *Hubbard v. Springwells*, 25 Mich. 154; *Anderson v. Hill*, 54 id. 486. The constitution expressly forbids the state to make these improvements. It does not expressly empower anybody to make them. By necessary implication, however, it makes ample provision for their making. It recognizes counties, cities, towns and villages as parts of an existing order of things, and provides for their creation; and these are bodies which always had the power of making such improvements within their own boundaries, and at the expense of property therein.

7. Counsel for plaintiffs in error insist, that "every property owner in the county is benefited by an improved road through the county, and those living nearest the road are benefited more than those living more remote." We concede the fact to be as claimed, but a law based upon such theory or assumption is unconstitutional. Benefits, to constitute the basis for a special assessment, must be different in kind rather than in degree from such as are received by the public generally. And yet the act arbitrarily assumes that all lands within the limit will be specially benefited to a particular extent years in advance of the time that it can by any possibility be known whether such will be specially benefited at all or not, and, if so, to what extent.

8. The eighth section of the road-improvement law, which requires that all personal property, as well as real estate, in the taxing district, shall be included in the apportionment and charged with the cost of improvement, in effect creates a personal liability upon all of the resident landholders for the payment of the special assessments. The utmost extent to which the power of levying special assessments for local improvements has ever been carried is the confiscation of the real estate alleged to have been benefited. If the real estate is not of sufficient value to pay the assessment charged against it, re-

sort cannot be had to the personal property of the owner for the remainder, nor can it be charged upon or collected out of his personal property.    Elliott, Roads & St. 400; Cooley, Tax. 472; *Higgins v. Ausmuss*, 77 Mo. 351; *City of Raleigh v. Peace*, 14 S. E. Rep. 521.

If it is claimed that the statute does not authorize the assessment to be charged upon the personal property benefited, but requires that special benefits to personal property shall be charged upon the real estate, then the statute is grossly unequal and absurd in its operation, because benefits to the personal property of an owner who had no real estate would either be charged upon the real estate of some other person who did own real estate, or would escape taxation entirely. Until this statute was enacted, however, we presume it never occurred to anyone that personal property was susceptible of receiving special benefits from street improvements, in the sense that such benefits have heretofore been made the basis of special assessments.

The opinion of the court was delivered by

HORTON, C. J.:  The only question presented is, whether chapter 214, Laws of 1887, is constitutional.  The court below held the act to be unconstitutional.  We appreciate the well-settled doctrine of this court, as, also, of the supreme courts of nearly all the states, that no statute should be declared unconstitutional unless the infringement of the superior law is clear, beyond substantial doubt.  (*The State, ex rel., v. Robinson*, 1 Kas. 17; *Comm'rs of Leavenworth Co. v. Miller*, 7 id. 479; *The State, ex rel., v. Hunter*, 38 id. 578; *Ogden v. Saunders*, 12 Wheat. 213.)  "As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails." (*The State, ex rel., v. Thoman*, 10 Kas. 191.)  "Constitutional limitations need not always be express.  They are equally effective when they arise by implication." (*Prouty v. Stover*, 11 Kas. 235.)  "It would be a dangerous doctrine to announce, that any of the provisions of the constitution may be obeyed or disregarded at the mere will

or pleasure of the legislature, unless it is clear beyond all question that such was the intention of the framers of the instrument." (*Comm'rs of Sedgwick Co. v. Bailey*, 13 Kas. 607.)

The first contention is, that chapter 214 is unconstitutional because it attempts to delegate legislative power to the petitioners, and confer upon them the absolute and arbitrary power to levy taxes and special assessments on the property of others. The petitioners named in the statute are authorized, absolutely and arbitrarily, to determine whether the improvement is necessary and shall be made. No discretion, exercise of judgment, or revisory or supervisory control is vested in the board of county commissioners, or any other tribunal or officer elected by or responsible to the people. When the petition is presented to the board of county commissioners demanding the improvement of a road, it is, in the language of the statute, "made the duty of such county commissioners to cause the same to be improved." The county commissioners have no discretion to refuse the improvement. Here an important power, namely, that of causing public improvements, and of levying general taxes on all of the people, in addition to special assessments on a portion of them, to pay for such improvements, is conferred directly upon a class of persons, many of whom may not be electors. The petitioners are authorized, absolutely and arbitrarily, to fix the boundaries of the taxing district; the nature, extent and cost of the improvement to be made; and no officer or tribunal of the people has any discretion in this respect. The boundaries of the taxing district are fixed by the "terminal points mentioned in the petition." "The points between which the improvements are to be made," and "the kind of improvements," are determined by the petition.

Opposing counsel say that the board of county commissioners has, under the statute, discretion whether to make the improvement or not. They insist that the statute is directory only, not mandatory. Within the prior decisions of this court, we think otherwise. The statute reads:

"That whenever a majority of the resident landholders

within one-half mile on either side along the line of any regularly laid out road, within the terminal points mentioned in the petition, shall petition the board of county commissioners of any county in this state for the improvement of any road as located, or any part thereof, it is hereby made the duty of such county commissioners to cause the same to be improved, as hereinafter provided." (Laws of 1887, ch. 214, § 1.)

It was decided in *The State, ex rel., v. Faulkner*, 20 Kas. 541, that

"Where a city of the third class has in fact a population of over 2,000 inhabitants, but such fact has never been legally ascertained by the city authorities, it is the legal duty of such city authorities to immediately and legally ascertain such fact, and then to take the necessary steps to organize as a city of the second class."

Section 1, chapter 107, Laws of 1876, reads:

"Whenever two-fifths of the resident taxpayers of any county, or two-fifths of the resident taxpayers of any municipal township, shall petition in writing the board of county commissioners, or whenever two-fifths of the resident taxpayers of any incorporated city shall petition the mayor and council of such city, to submit to the qualified voters of such county, township or city a proposition to subscribe to the capital stock of, or to loan the credit of such county, township or city to, any railroad company constructing or proposing to construct a railroad through or into such county, township, or city, the county commissioners for such county or township, or the mayor and council for such city, shall cause an election to be held to determine whether such subscription or loan shall be made."

That section was construed as being mandatory, not discretionary. If a sufficient petition is presented under that statute, it is the duty of the board of county commissioners to call an election. There is no discretion. (*The State, ex rel., v. Comm'rs of Rush Co.*, 35 Kas. 150; *The State, ex rel., v. Comm'rs of Reno Co.*, 38 id. 317; *C. K. & N. Rly. Co. v. City of Manhattan*, 45 id. 419; *The State, ex rel., v. Comm'rs of Cloud Co.*, 39 id. 700.) These and many other decisions of this court hold that, where a legal duty is cast upon a board

of county commissioners, that duty may be enforced by *mandamus*, and such duty cannot be evaded upon the ground that the county officials have a discretion to act. The statute referred to makes it the duty of the county commissioners to cause the improvement to be made, if the petition required by § 1 of chapter 214 is presented and filed.

Section 1, article 2, of the constitution of the state, ordains that "The legislative power of this state shall be vested in a house of representatives and senate."

Section 21, article 2, of the constitution, ordains that "The legislature may confer upon tribunals transacting the county business of the several counties such powers of local legislation and administration as it shall deem expedient."

Section 5, article 12, of the constitution, ordains that "Provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit shall be so restricted as to prevent the abuse of such power."

The improvement in this case is not within any city, town, or village; therefore, so far as this case is concerned, under the constitution of the state, no power of legislation can be exercised excepting by the legislature itself, or some tribunal transacting county business. The board of road commissioners authorized to be appointed under the provisions of said chapter 214, is not a county tribunal; therefore, under the constitution, these commissioners have no power of local legislation, and the legislature has no power, under the constitution, to delegate the road commissioners any legislative authority. (Cooley, Const. Lim., §§ 117, 191.) It was said by Chief Justice KINGMAN, in *Auditor of State v. Railroad Co.*, 6 Kas. 500, that

"Where the money is raised by taxation, an ascertainment of the value of the property is a necessary prerequisite, and therefore an incident to the power to tax. It would be competent for the legislature to appoint commissioners for this purpose, who should report directly to the legislature, who

could revise and correct such valuation. That the inconvenience of such a mode would preclude its adoption, is no argument against the power. The power exists, and is a legislative power, and shows conclusively that it cannot be a judicial power."

The authorities from New York and some other states, referred to by counsel for defendants below, to the effect that taxation or assessment is judicial in its nature, are fully considered and negatived by this court in the case just cited.

We are therefore compelled to rule that, to some extent, the powers and duties of the road commissioners, under the provisions of said chapter 214, are legislative, and, as such commissioners are neither the legislature nor a tribunal transacting business of any county in the state, the legislature could not confer upon them all of the powers attempted to be imposed by the provisions of said chapter. (*People v. Parks,* 58 Cal. 641; *Thompson v. Schermerhorn,* 6 N. Y. 92.)

If the legislature had established the road and cast the cost and expenses thereof upon the county, the statute might have been constitutional, within *The State, ex rel., v. Comm'rs of Shawnee Co.,* 28 Kas. 431. If the legislature had conferred upon the board of county commissioners of Wyandotte county discretion to order the improvement, the control thereof, and the amount of expenditure therefor, the statute might be valid. (Const., art. 2, § 21.)

It is said, in answer to the objections against chapter 214, that if it is unconstitutional the general road law of Kansas is also unconstitutional. Not so. Before a board of county commissioners of any county in this state is required to appoint viewers to locate, alter or vacate any public road or highway under the road law, one or more of the signers of the petition presented to the board must give a bond with sufficient securities, payable to the state for the use of the county, conditioned that the persons signing the bond shall pay into the treasury of the county the amount of all cost and expense accruing in the location, alteration or vacation of the road in case the road is not finally established. (Gen. Stat. of

1889, ¶¶ 5474–5476.) After the viewers appointed under the road law to make a report in favor of or against the establishment, alteration or vacation of any road complete their work, the board of county commissioners is not compelled to establish, alter or vacate such road, unless it is satisfied that such establishment, alteration or vacation will be of public utility. (Gen. Stat. of 1889, ¶ 5479.) Under the road law, the board of county commissioners has full power to order or control the improvement. Under chapter 214, it has no discretion, no revisory or supervisory control of the improvement or its cost.

Again, it is said, against the objections suggested, that the free-turnpike law of Ohio and the gravel-road law of Indiana are similar in their provisions to said chapter 214. These statutes have been held constitutional by the Ohio and Indiana supreme courts. It is therefore said that chapter 214 should be declared constitutional. An examination of the statutes of Ohio and Indiana shows that they differ in important matters from the statute of Kansas. In most of the statutes of Ohio giving authority to pave, plank, gravel or macadamize a county road or any part thereof, the power so to do is conferred upon the board of county commissioners. Discretion is given to act, or not. (Supp. Rev. Stat. of Ohio [Swan & Saylor], 1868, p. 673; *The State v. Warren Co.*, 17 Ohio St. 558.)

Under the act of 1867, to authorize county commissioners in that state to lay out and establish free turnpike roads, it is not stated by the provisions of the statute that the board of commissioners is compelled to act upon the presentation of the petition of a majority of the resident landholders. (Supp. Rev. Stat. of Ohio, 1868, ch. 83, p. 680, ¶ 63.) At least, no decision is referred to construing the statute to be mandatory. It is true, that the words "shall appoint" are used in that act, but these words are not as strong as the statute of this state, which prescribes that, when a majority of the resident landholders shall petition, "it is hereby made the duty of such county commissioners to cause the same [road] to be improved."

In the Indiana statute authorizing the construction of, grading, macadamizing or paving roads, the power to order the improvement is conferred upon the board of county commissioners. The commissioners are not compelled to construct or improve the road, even if the viewers report favorably, unless, in their opinion, public utility requires it. (Laws of Indiana, 1877, p. 82, ch. 47, §§ 1–6.)

Again, the Ohio and Indiana statutes differ from chapter 214 in that the assessment or taxation is to be upon the land and taxable property within the limits of the road established or improved. In Ohio, gates are permitted to be erected for the collection of tolls. (Supp. Rev. Stat. Ohio, 1868, pp. 673, 674, 680–686.) The statutes of Ohio and Indiana conform to the rule thus stated by Cooley in his Constitutional Limitations (page 497):

"Assessments for the opening, making, improving, or repairing of streets, the draining of swamps, and the like local works, have been generally made upon property with some reference to the supposed benefits which the property would receive therefrom. Instead, therefore, of making the assessment to include all the property of the municipal organization in which the improvement is made, a new and special taxing district is created, whose bounds are confined to the limits within which property receives a special and peculiar benefit in consequence of the improvement. Even within this district the assessment is sometimes made by some other standard than that of value, and it is evident that if it be just to create the taxing district with reference to special benefits, it would be equally just and proper to make the taxation within the district have reference to the benefit each parcel of property receives, rather than to its relative value."

Under chapter 214, the improvement caused by a majority of the resident landholders of any special taxing district along the line of any regularly laid out county road is not to be paid for wholly by the property within the special taxing district created by them, but one-third of the cost of such improvement must be paid out of the general fund of the county—that is, by the taxpayers generally—without any

control of such improvement or the cost thereof by the county tribunal or any other person or officer elected by the people of the county.

It is next contended that chapter 214 is unconstitutional because it permits the special assessments for the cost of improving roads to be made upon personal property within the taxing district, as well as upon the real estate situated therein. The statute provides that

"Upon the completion of any improvement hereunder, said commissioners shall meet at the office of the county clerk and apportion two-thirds of the cost thereof among the several tracts of land designated in the map filed as aforesaid, according to the benefits to the real and personal property within the limits shown by said map derived from such improvement." (Ch. 214, § 8.)

We do not think that personal property within the taxing district can be assessed, in the manner prescribed by the statute, for the cost of such local or special improvements as macadamizing or paving county roads. If the statute does not authorize the assessment to be charged upon the personal property benefited, but requires that special benefits to personal property shall be charged upon the real estate, then it is grossly unequal and absurd in its operation, because benefits to the personal property of an owner who has no real estate would either be charged upon the real estate of some other person who owns real estate, or would escape taxation entirely.

The free-turnpike law of Ohio (Supp. Rev. Stat. 1868, ch. 83, § 6, p. 686) provides:

"That for the purpose of constructing free turnpike roads, authorized by this act, extra taxes may be levied as hereinafter provided, on all property, real and personal, within one mile on each side of said free turnpike road, except when any such free turnpike road, which has been macadamized or graveled, shall cross a free turnpike road which is either completed or in process of construction; then such lands and personal property as lie within one-half mile on either side of where such free turnpike roads cross each other shall be as-

sessed and taxed in proportion to the benefit that may be derived by the owners of such lands and personal property from the construction and use of such free turnpike road."

That statute, even if constitutional, limits the personal property to be taxed according to the benefits derived by the owner thereof from the construction and use of the road. Section 8, chapter 214, has no such limitation or qualification. Under said § 8, the personal property may be assessed or taxed for the special improvement, whether the owner thereof lives within the taxing district or not. To our minds, § 8 is unconstitutional, so far as relating to the special assessment of personal property. It is said that personal property was inserted for the purpose of embracing street railway companies and the personal property of such companies; but there is no qualification or limitation to the phrase "personal property." It must include all personal property, whether the owner be a person living in the county or out of the county; living in the state or out of the state. Such personal property, of course, may be subject to all taxes levied by the state, county, township or school district where it is found. But, under any fair or just construction of the constitution of the state, it cannot be made liable to additional or special assessments for the macadamizing or paving roads or highways at the special instance of resident landholders. (Elliott, Roads & St. 400; Cooley, Tax. 472; *Higgins v. Ausmuss*, 77 Mo. 351; *City of Raleigh v. Peace*, 14 S. E. Rep. [N. C.] 521.)

Under chapter 83 (Supp. Rev. Stat. 1868) of the Ohio Law, pp. 680–686, the petition of a majority of the freeholders of a taxing district cannot extend any part of the cost of constructing or improving the road over the county or over the taxpayers generally. The taxation or assessment for the improvement upon their petition must be confined wholly within the taxing district which they represent. Section 6 of said chapter 83 of the Ohio statute seems to be based upon the theory that a majority of the resident freeholders of any taxing district, by vote or petition, may subject the land

and personal property within such taxing district to the payment of the cost of improving a public road in such district, the special taxes or assessment to be levied in proportion to the benefits "that may be derived by the owners of such lands and personal property from the construction and use of such road." Chapter 214 gives a majority of the resident landholders of a special and small taxing district, established at their instance, the power to subject the land and personal property within such district to two-thirds of the cost of improving any county road in the district, "according to the benefits to the land and personal property within such taxing district," and in addition gives such resident landholders in such specific and small district the power to compel all the taxpayers of the county to pay one-third of such special taxes or assessment, without having any voice, either through their own votes or through the action of any county tribunal or other elected officer. Under the Ohio statute, the improvement and special assessments to pay the same are submitted to the discretion of the resident freeholders of the special taxing district, and no part of such special assessment can be imposed by the resident freeholders of a special taxing district upon the taxpayers of the whole county. By the statute of this state, one-third of the cost of such improvement is cast upon the taxpayers of the whole county, *nolens volens*, and the taxpayers of the county outside of the special taxing district have no discretion, voice or vote in the improvement or its cost. Even if the legislature has the power to confer an authority or discretion as to the execution of such a statute as chapter 214, it ought not to have the power, and we do not think it has the power, to confer an authority or discretion as to the execution of such a statute upon the resident landholders of a special and small taxing district, when other districts and other taxpayers are interested, and must bear a part of the burden of the improvement or special assessment. If discretion to make such improvement had been conferred upon the board of county commissioners, or if the improvement or its cost had been referred to all the landholders required to pay

Chapter 214, Laws of 1887, invalid.

any part of the burden of such improvement, the statute might be upheld, on the ground that the parties interested were given the power to decide whether the improvement should be made and the statute thus executed. But only a part interested have any authority. They can, under this statute, impose taxes or special assessments on other taxing districts and on the whole county, without any right of such other taxing districts to vote, or the county, as a whole, to have any voice in the proceedings.

There are other serious objections urged against the constitutionality of said chapter 214, but sufficient has already been said to show that it cannot have any operation. That similar proposed statutes may be used for unusual and extravagant county roads, see *Graham v. Conger*, 4 S.W. Rep. (Ky.) 329; *Conger v. Graham*, 11 id. (Ky.) 467; *Washington Avenue*, 69 Pa. St. 352; *Seely v. Pittsburg*, 82 id. 360.

If the facts of this case had shown that Abbott had voluntarily invoked for his benefit the provisions of chapter 214, he would not have been entitled to an injunction. "A party cannot invite and encourage a wrong and then ask a court of equity to protect him from the consequences of such wrong." (*Stewart v. Comm'rs of Wyandotte Co.*, 45 Kas. 708; *Comm'rs of Wyandotte Co. v. Hoag*, 48 id. 413; *Downs v. Comm'rs of Wyandotte Co.*, 48 id. 640.)

The judgment of the court of common pleas will be affirmed.

ALLEN, J., concurring.

JOHNSTON, J., dissenting: I think the validity of the statute may be fairly and reasonably sustained. It is a general law, enacted more than six years ago, which may become effective in any county where its operation is invoked. It makes provision for the special improvement of county roads, and provides that the greater part of the expense shall be assessed against property specially benefited by the improvement. Statutes providing for improvements of this character, like the paving of streets and alleys, the building

of turnpike or macadam roads, and the draining of swamp or low lands, are not uncommon, and, while they differ in detail, they all rest upon the principle that property specially benefited may be justly assessed to the extent of the benefit. The road law in question provides that two-thirds of the expense of the improvement shall be borne by the owners of the property within one-half a mile on either side of the road to be improved, and the remaining one-third of the cost is to be paid by the county out of the general fund. While the owners of property within the taxing district fixed by the legislature are specially benefited, the public uses and has the benefit of the improved road, and no one denies the justice and equity of placing a portion of the cost of the improvement upon the county. Where streets of a city are paved, or walks built, the burden of preparing for the work and improving the areas formed by the intersections and crossings of the streets is usually placed upon the public or city at large, and the remaining expense of the improvement is charged to the abutting lot owners. The fact that a portion of the improvement is required to be paid for by the city has never been urged as a ground of invalidity against the statute authorizing it, but generally the contention has been that a greater part or the whole of the expense should be paid out of the general funds of the city. The principal objection to this road law is, that there is a delegation of legislative power to persons other than the boards of county commissioners that is violative of § 21 of article 2 of the state constitution. In behalf of Abbott, it is claimed that at the mere will or discretion of a few landholders the improvement to be made is determined upon, the taxing district fixed, the assessment levied, and a large bill of expense charged upon the county, without the order or consent of the county commissioners.

The statute provides that the proceedings for the improvement of a road shall be initiated by the petitioners; but they merely *petition* the county commissioners, and do not grant their own request nor order the improvement to be made. That duty devolves upon the county board. It causes the

road to be improved upon the request of the petitioners; and I hardly think that any action which is to be taken by the petitioners can be regarded as the exercise of legislative power. It is the usual mode for initiating proceedings of this character; and the fact that the petition must be acted upon, and that the improvement results in an expense against the county, is not a ground of invalidity. The night herd law is brought into operation in a township by a petition of a majority of its electors, and by the terms of the statute the duty of the county commissioners of making the order when the petition is presented is mandatory. (Gen. Stat. of 1889, ¶ 6688.) This statute has been held to be constitutional and valid. (*Noffzigger v. McAllister*, 12 Kas. 315.) The opening or vacation of a highway under the general road law is initiated upon the petition of 12 householders, and such petition, like that provided for in this law, must specify the place of beginning, the intermediate points, if any, and the terminals of the road. When a legal petition is presented, it is the imperative duty of the commissioners to appoint viewers and set the machinery in motion for the establishment or vacation of the road. The action taken by the petitioners has never been treated as an exercise of legislative power. In such a case final action is to be taken by the commissioners, who are vested with the duty and discretion of determining the necessity and utility of the proposed road or alteration. This discretion is not to be exercised, however, until after the survey, view and viewers' report are made. The width of such a road is arbitrarily determined by the viewers at the time of establishing the same; the giving of this power to the viewers has never been held to invalidate the law, and the omission of this duty by the viewers does not invalidate the road. (Gen. Stat. of 1889, ¶ 5501; *Willis v. Sproule*, 13 Kas. 257.)

Under the act providing for the appointment of metropolitan police, the executive council is required to appoint commissioners whenever 200 *bona fide* householders of the city petition therefor. When the petition is presented, the duty of the executive council to appoint is obligatory. Although the

validity of the act was challenged, it has been sustained. The act of the petitioners was not regarded as an exercise of legislative power, and it was held that this provision did not contravene the constitution by delegating legislative power to the executive council. (*The State, ex rel., v. Hunter,* 38 Kas. 578.)

No legislative power is exercised by any of the parties outside of the county commissioners, and, indeed, most of the power exercised by them in improving roads is judicial or *quasi* judicial, and some of it is executive or administrative in character. (*Willis v. Sproule,* supra; *Fulkerson v. Comm'rs of Harper Co.,* 31 Kas. 126.) Under the statute in question, the taxing or assessment district is prescribed by the legislature itself, and the limits placed at a distance of one-half a mile on either side of the improved road, and the rule or measure making the assessment and providing for the expense is fixed by the act itself. In my view, however, the board of county commissioners is vested with discretion in the granting of a petition and in the ordering of an improvement. They are first to determine the sufficiency of the petition, that is, whether the terminal points of the proposed district are named, the character of the improvements described, the time for which assessments to pay for the improvement is named, and whether a majority of the resident landholders within one-half a mile on either side of the road to be improved have signed the petition. If the petition is found to be sufficient, they are to cause a survey of the proposed road to be made, and a careful estimate of the cost of the improvement, together with specifications for the improvement, and a map showing the tracts of land within one-half a mile on either side of the proposed improvement; and when all these things have been done, it is then provided that the board shall appoint road commissioners to conduct the improvement of the road.

In § 1 it is provided that they shall cause the road to be improved, and in § 4 of the act it is provided that, upon the completion of certain acts, they shall appoint three commissioners. While this language is mandatory in character, it is to be considered and construed in connection with the other

statutes defining the powers and duties of county commissioners. The powers of a county as a body politic are exercised by the county commissioners, and, under chapter 25 of the General Statutes, they are intrusted with the management of the business and concerns of the county, and to that end may perform many acts for which no special provision is made by law. (*Comm'rs of Neosho Co. v. Leahy,* 24 Kas. 54.) They are to provide the funds for the transaction of public business, and are vested with great discretion in expending the same. They are acquainted with the condition of the highways and bridges in the county, and know just what funds have been provided and can be devoted to such purposes. These things are not likely to have been overlooked by the legislature in enacting the road law; as it provided that one-third of the expense of improving the roads was to be paid by the county, it certainly had in mind that the board was limited as to the amount of moneys which could be applied to such purpose. Only a certain per cent. can be levied for current expenses by the county board, and it was certainly not intended that the board should go beyond the means on hand in ordering improvements. In fact, it is unlawful for the board to contract debts and issue evidences of indebtedness for these purposes beyond the amount on hand or which can be provided by the current levy. With these provisions and limitations in mind, the legislature clearly did not intend that the county commissioners should order improvements made and county expenses incurred except when in their judgment the improvement was necessary and the public funds would justify the expenditure. Although the language of the statute is imperative in form, it will be observed that no negative or prohibitive words are used. In the matter of making such improvements, and especially those which entail expense upon the county or municipality, the officers through whom they are to be made are usually held to have a large discretion as to what, if any, improvements shall be made. (Elliott, Roads & St. 410.) And so it has been held that, in the absence of words of positive prohibition, statutes directing the mode of proceeding by

public officers are directory, and not to be regarded as essential to the validity of the proceedings themselves. (*People v. Allen*, 6 Wend. 487; *People v. Holley*, 12 id. 481; *People v. Cook*, 14 Barb. 290; Cooley, Const. Lim. 75.)

In order to sustain the statute and carry out the purpose of the legislature, language such as that employed in the road law may be properly regarded as discretionary. The language of a statute should always control in determining its meaning, but we should not so rigidly construe its words as to defeat the manifest intention of the legislature. Reading the statute in connection with others relating to duties of county commissioners, I think the clause which provides that, upon the presentation of a petition for the improvement of a county road, it is made their duty as commissioners to cause it to be improved may be fairly interpreted as meaning that power is vested in them to make such improvements. The duty to receive a petition, to determine whether it should be allowed, and to make the improvement if allowed, is placed on them rather than on other officers or tribunals that might have been intrusted with the duty. It was no more than to say that the commissioners were authorized to act. These officers are charged with the business of making the improvements if any shall be made, and a prerequisite to any action by them is the petition of the landholders. The petition is addressed to them; their judgment and discretion are invoked by it, and if they deem it advisable the improvement will be ordered and the work proceed. The statutes abound in cases where language of an imperative character is treated as directory and discretionary; and where a statute is fairly open to two interpretations, one of which will uphold it, and the other strike it down and defeat the purpose of the legislature, the former should control. The object of the legislature should not be defeated by a too rigid and strict adherence to the letter of the law when its object is manifest.

In the state of Ohio, statutes substantially similar to ours were enacted. They were subject to most of the objections and criticisms which have been urged against ours, and some

of them are equally imperative in the language devolving the duty of appointment and action upon the county commissioners. (Supp. Rev. Stat. Ohio, 1868, p. 680.) These statutes appear to stand as valid, and the decisions of the supreme court of Ohio answer most of the objections that have been presented against the Kansas statute. (*Turnpike Road v. Sandusky Co.*, 1 Ohio St. 149; *Reeves v. Treas. of Wood Co.*, 8 id. 333; *The State v. Comm'rs of Warren Co.*, 17 id. 558.) If our statute is to be treated as a grant of authority, then, under numerous rulings, it would not deprive the commissioners of discretionary power, nor can they be compelled to act by *mandamus*. (Elliott, Roads & St. 341, and cases cited.) There is no room for the exercise of discretionary power where the county commissioners are required to call an election for the voting of railroad bonds, and hence I do not regard the case cited to be a controlling authority. Under one of our statutes providing for drainage of swamps, bottoms, and other low lands, a part of the expense may be apportioned against the county by the township officers, and the county commissioners have no voice or discretion in approving the measure or allowing the claim. (Gen. Stat. of 1889, ¶¶ 2624–2638.) In *Sargent v. Burch*, 26 Kas. 581, the validity of this statute, so far as it imposed the expense and burden upon the county, was considered and upheld. It is true that some of the details of the improvement are committed to persons designated by the county commissioners, but their duties are prescribed by the statute, which furnishes the rule and guide for carrying out the legislative will. They are mere ministerial agents who exercise no legislative power, and the provisions directing them are not obnoxious to the constitutional restriction against the delegation of legislative power. It is no more a delegation of legislative power than where commissioners are appointed by the county board to superintend and control the building of bridges, nor where the board appoints a superintendent of the county asylum, and I think the validity of these acts stands unquestioned.

One other objection is made, and that is to the plan of

assessment. The statute in effect provides for the assessment of both real and personal property within the prescribed limits, according to the benefits derived from the improvements. This plan has been adopted in Ohio, as is shown by the statute quoted in the prevailing opinion. It belongs to the legislature to determine what the rule of apportionment shall be, and, where not restrained by the constitution, the legislature has a discretion coextensive with the broad domain of legislative power. It is true that no scheme of assessment which has yet been devised will in all cases do absolute and exact justice; and where the rule provided produces reasonable equality, and does not transgress any constitutional restriction, it must stand. (*Newman v. City of Emporia,* 41 Kas. 585; 2 Dill. Mun. Corp., § 761.)

In my opinion the statute is valid, and the judgment of the district court should be reversed.