THE INGLESIDE ASSOCIATION, *Plaintiff,* v. JAMES M. NATION, *as Auditor, etc., Defendant.*

No. 16,826.

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Taxation—Purpose—Benevolent Institution.* The appropriation of $400, made in behalf of the Ingleside Association, at Topeka, by section 2 of chapter 1 of the Laws of 1909, for the year 1910, is not unconstitutional, and that association is entitled to such appropriation; and it was the duty of the state auditor to issue a warrant upon the state treasurer therefor, upon proper demand.

Original proceeding in mandamus. Opinion filed July 9, 1910. Writ allowed.

*George H. Whitcomb,* and *Clad Hamilton,* for the plaintiff.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for the defendant; *E. W. Grant,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: This is an original proceeding in this court for a writ of mandamus to compel the state auditor to issue a warrant in favor of the Ingleside Association for Aged Women, in the sum of $400, that amount having been appropriated by section 2 of chapter 1 of the Laws of 1909 for the benefit of such

association. An alternative writ was issued, from which the following facts are taken:

The Ingleside Association is and has been an eleemosynary corporation, duly created under the laws of this state, and has been engaged in conducting a charitable institution at Topeka. The special line of charitable work which this association does is to furnish a permanent Christian home for homeless and aged women, and a temporary home for women seeking employment. To enter this home as a permanent resident, the woman must be not less than sixty-five years of age, and pay an admission fee of $300, which is the total amount required during her life.

It is estimated that such women may be expected to live between eleven and twelve years, or until seventy-six or seventy-seven years of age. Should they live ten years the sum of $300, paid for admission, would amount to less than fifty-eight cents each per week toward paying their expenses. From this it will be seen that the home is not maintained for the profit derived therefrom.

All the appointments and conveniences of a modern home are supplied to the inmates. Needy women are supplied with temporary homes when necessary. It is managed by a board of directors, composed of women who belong to the association and give their time and labor without compensation. The association depends to some extent upon contributions from persons who are charitably inclined. Shawnee county contributes the sum of $35.53 monthly. One of the conditions of admission as an inmate is that the applicant must not have relatives legally liable for her maintenance who are able to provide for her. The admission fee is not always required.

The principal objection urged by the auditor against the payment of this appropriation is that it is using public money provided by taxation for a purpose not public. To define what constitutes a public purpose for

which a tax may be lawfully imposed is a task of some difficulty. In the case of *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, the supreme court of Wisconsin approved the following quotation:

"To justify a court in declaring a tax void, and arresting proceedings for its collection, the absence of all possible public interest in the purposes for which the funds are raised must be so clear and palpable as to be immediately perceptible to every mind. Claims founded in equity and justice, in the largest sense of those terms, or in gratitude or charity, will support a tax. *Broadhead et al. v. The City of Milwaukee et al.,* 19 Wis. 624, syllabus." (p. 578.)

This rule is in harmony with the decisions of this court as to when and under what circumstances a legislative enactment of this character should be declared unconstitutional. (*State of Kansas, ex rel. Crawford, v. Robinson and others,* 1 Kan. 17; *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148; *The State, ex rel., v. Hunter,* 38 Kan. 578.) Applying this rule to the act in question, we are unable to say that it is invalid. It seems to us that the protection and comfort of aged women who are homeless and without means or near relatives able to provide them with subsistence is a matter of general public concern—a charity which will be regarded with universal favor.

The inmates are not received from any specified territory. The association is in no sense local. It is open to the state, so far as its capacity will permit. It is recognized by the state as a deserving charitable institution and worthy of public support, and the state board of control has issued a certificate to that effect. The inmates can be much better cared for in such an association than in one large enough to accommodate the entire state, and where employees are supplied by the state. This association is cared for and supplied and managed by women who devote their time and attention thereto without compensation, and solely for the sake of bestowing charity upon worthy and appre-

ciative people, for whom they entertain a lively and kindly sympathy. It is not contemplated by the policy of this state that its charities shall be directly administered by the state itself, but, on the contrary, section 1 of article 7 of the constitution provides that charitable institutions shall be fostered and supported by the state, etc. The section reads:

"Institutions for the benefit of the insane, blind, and deaf and dumb, and such other benevolent institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be prescribed by law. Trustees of such benevolent institutions as may be hereafter created shall be appointed by the governor, by and with the advice and consent of the senate."

To make the appropriation in question conform fully to this constitutional provision, the same legislature in the same law provided as follows:

"All private institutions of the state of a charitable nature, which shall receive state aid, shall be subject to the same visitation, inspection and supervision by the board of control of state charitable institutions as are the public charitable institutions of this state. And it shall be the duty of the said board of control to pass annually upon the fitness of every such institution, and every such institution shall annually, at such time as said board of control shall direct, make report thereto, showing its condition, management and competency to adequately care for its inmates or patients, and such other facts as said board may require." (Laws 1909, ch. 1, § 1, Gen. Stat. 1909, § 7978.)

Under these laws this association is recognized as a charitable institution worthy of the fostering care of the state; and the small sum provided by this appropriation is not entitled to be dignified by a suggestion that the state is supporting this association, but it is sufficient to denominate it as a small sum given to foster and aid a worthy charitable enterprise. We are unable to see wherein this appropriation can be fairly criticized. It carries out the constitutional provision.

that the state shall foster such benevolent institutions as the public good may require. The state has investigated, through its proper officials, and found the association to be worthy of assistance. The appropriation is one which seems to be proper and commendable. The auditor should issue the warrant.

The writ is allowed.