THE AUDITOR OF STATE, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILROAD CO.

1. SUPREME COURT—*Jurisdiction of.* The jurisdiction of the Supreme Court is restricted by the constitution to original proceedings in quo warranto, mandamus and *habeas corpus*, and such appellate jurisdiction as may be provided by law.

2. ———— *Appellate Jurisdiction, restricted to Proceedings of a judicial nature.* The appellate jurisdiction can only be given where there has been a decision by one clothed with judicial authority, and acting in a judicial capacity when making the decision.

3. POWER TO TAX. The power to tax is a legislative power, and not in any sense judicial. ,

4. ASSESSING OF PROPERTY—*Duty cannot be conferred on Supreme Court.* The valuation of property for purposes of taxation is an incident to the taxing power, and therefore not such judicial power as can be conferred upon the Supreme Court.

5. ACT OF 1869, CHAPTER 124—*Property of Railroad Corporations—Assessments—Appeals.* Section 11 of chapter 124 of the laws of 1869, giving the Supreme Court jurisdiction to hear appeals from the Board of County Clerks, in the appraisal of the property of railroads for purposes of taxation, is giving said court power not judicial in its character, and is, therefore, not authorized by the constitution.

*Appeal from Board of Railroad Assessors.*

CHAPTER 124 of the laws of 1869, (p. 249,) prescribed the manner in which the property of railroad and other corporations should be assessed for the purposes of taxation. Section 2 provides that " the county clerks of the several counties in which any railroad company now has, or hereafter may have its track and roadway, or any part thereof, shall constitute a Board of Appraisers and Assessors for the property of said railroad company." In 1870 the *Atchison, Topeka & Santa Fe Railroad Company* had its track or roadway, and its road in operation, in the counties of Shawnee, Osage, and Lyon. The county clerks of the counties named met, as provided for in section three of said chapter 124, and assessed the property of the appellee, the *A., T. & S. F. Railroad Company*, and certified and deposited with the Auditor of State the record of their proceedings, as required by section 10 of said act. The *Auditor of State*, A. THOMAN, regarding

said assessment as too low, appealed therefrom to this court, as provided by section 11 of said chapter 124, which section is as follows :

"SEC. 11.–The State Auditor, or any Railroad Company interested in the appraisal and assessment hereinbefore provided for, may appeal from the appraisement and assessment made and returned to the State Auditor by the board of appraisers and assessors hereinbefore provided for.  Whenever in the opinion of said Auditor, such appraisement is *too low*, he may take such appeal to the Supreme Court of the State, by notifying the company interested of his intention to take such appeal, within ten days from the time when the return is so made to him by the board of appraisers and assessors, as is hereinbefore provided; and whenever, in the opinion of any Railroad Company, whose property has been so appraised and assessed, such appraisement has been fixed *too high*, such railroad company may appeal from such appraisal and assessment to the Supreme Court by giving, within ten days after the return of the same to the Auditor, a notice to the State Auditor, notifying him of its intention to take such appeal.  And when any such appeal shall be taken, the Auditor shall forthwith transmit the book in which is kept the record of such appraisement and assessment, together with all papers and memoranda in his hands touching the same, to the clerk of the supreme court, together with a notice of the object of the same." .

The appeal being filed and docketed in this court, the appellee moved the court to dismiss the appeal, for want of jurisdiction.

*Martin, Burns & Case*, in support of the motion :

1. This court has no jurisdiction in this proceeding, and the appeal of the Auditor ought to be dismissed. This court has no *original* jurisdiction except in three classes of cases, mentioned in article 3, § 3 of the Constitution.

What other jurisdiction, if any, has this court?  Sec-

tion 3 of Art. 3, already referred to, furnishes the answer, to-wit: " and such *appellate* jurisdiction as may be provided by law."

We submit, that the constitution limits the *appellate jurisdiction* of this court to appeals from " courts" in the sense in which that word is used in § 1 of said Art. 3. The " judicial power" of the State is vested in *courts*, and this court has no jurisdiction except " *appellate*" from these inferior courts, save in the three classes of cases already mentioned where original jurisdiction is given.

2. The Board of Appraisers and Assessors provided for by § 2 of ch. 124 of the laws of 1869 does not *constitute a " court"* in the constitutional sense of that term. The board to some extent, in making the appraisement and assessment, may act judicially; in other words the act of appraising is a judicial act; but in no other sense is the board a judicial tribunal, and in no sense is it " a court."

But if this Board of Appraisers is a judicial tribunal whose acts may be appealed from, we then insist that it is a tribunal of special and limited jurisdiction, and inferior to the district court, and that all appeals therefrom must go to the district court.   This is true from the very nature and order of our judicial system, and is clearly indicated by § 10 of Art. 3 of the Constitution.   But even here we insist that only *causes, actions, cases*, in the legal sense of causes, can be appealed to the district court, or any other court.   *Crane v. Giles*, 3 Kas., 54.

Further still; in no case can this court be converted by the legislature into a court of *original* and *general jurisdiction* to try causes *de novo*.   The only power this court has, in any case coming from any court, is, to review the proceedings of the inferior court to determine whether the proceedings had before the inferior court has been in

accordance with the law of the land. We cannot believe that the framers of our constitution ever designed or even contemplated the possible existence of such a state of facts; yet this court, by the law of 1869, is called upon not to *review*, upon the appeal, the action of the Board of Assessors, but to proceed *de novo*—to hear evidence, and make the assessment and appraisement of the value of the property of the corporations named in the act. It is not within the province of the legislature to impose upon the court duties of the character indicated.

3. But we are told that this special duty is imposed upon the *Judges* of this court, and that it is not a duty required of "the court." The language of § 11 of the act is, " Whenever in the opinion of said Auditor, such appraisement is too low, he may take such appeal to the *Supreme Court* of the State." And § 12 declares that "the *court* shall hear and determine the matter." We answer further, that if the *judges* are to perform the duty, the law is unconstitutional; for, if it is not a duty required of the court but of the Judges, then it is an attempt to confer upon the Judges another " Office of Trust" during their terms of office, and § 13 of article 3 of the constitution says this shall not be done.

*Attorney-General Danford*, for the Auditor of State, filed no brief.

The opinion of the court was delivered by

KINGMAN, C. J.: The Auditor of State appealed to this court from the appraisal of the property of the Atchison, Topeka and Santa Fe Railroad Company made by the board of county clerks. The appeal is taken in pursuance of section 11, of chapter 124 of the laws of 1869. The railroad company appear by counsel, and move the

court to dismiss the appeal on the ground that this court has no jurisdiction of the matter.

The act above referred to by express terms gives the jurisdiction to this court; and that it does so, is not controverted in the argument. The alleged want of jurisdiction rests therefore wholly upon the want of power in the legislature to confer such jurisdiction upon this court; and this is the point to be decided upon this motion. Unless prohibited by the constitution, such an act is clearly within the limits of legis ative power; therefore the examination is limited to the inquiry as to whether such a restsiction is to be found in the constitution.

This court is created by the constitution, and the outlines of its jurisdiction established by that instrnment. It has original jurisdiction in three specific classes of cases, which it possesses independent of any legislation, and such appellate jurisdiction as may be provided by law. The jurisdiction of the court under this last provision, is wholly dependent upon the will of the legislature. It may be enlarged or restricted, as the legislature shall prescribe; but in all its acts the legislature is still under the restriction that the jurisdiction conferred must be appellate, not original. And it is not all appellate jurisdiction that can be conferred by legislation, for it is expressly provided that "all appeals from probate courts and justices of the peace, shall be to the district court:" (Art. 3, § 10.) The legislature is further restricted to appeals in their nature and essence *judicial* in their character. It would be absurd to claim, that it is in the power of the legislature to clothe this court with authority to review acts purely executive in their character, by giving an appeal therefrom to this court. Many of the duties which

1. SUPREME COURT —jurisdiction.

2. Appellate jurisdiction—restriction of.

the executive is called upon to perform require great care and judgment in deciding how to act. Yet when the decision is made an appeal could not be given to this court, for that would give to the court *executive* powers as well as *judicial*—a power as dangerous to good government as it is subversive of the constitution which has carefully kept separate the executive, legislative, and judicial departments of the government, " to the end that this may be a government of laws and not of men."

The term, then, " appellate jurisdiction," as used in the constitution, has some other meaning than that there should be merely an appeal from some decision or act of some officer of the State; and it is this meaning of the term that is to be sought for. In this search we are not left entirely to our own reason for guidance. The constitution of the United States contains a clause of similar import, which has been the subject of comment and decision by the supreme court of the United States, and the substance of their decision is thus stated by Judge Story in his Commentaries on the Constitution, sec. 1761: " The essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted, and acted upon by some other *court*, whose judgment or proceedings are to be revised. The appellate jurisdiction may be exercised in a variety of forms, and indeed in any form which the legislature may choose to prescribe; but still, the substance must exist before the form can be applied to it. To operate at all, then, under the Constitution of the United States, it is not sufficient that there has been a decision by some officer or depart-

ment of the United States; it must be by one clothed with judicial authority, and acting in a judicial capacity." This construction of the term represents, as well the general views of men, as the decisions of courts, and must have been in the minds of those who made it a part of our fundamental law, and must be held by this court as authoritative and binding. See the case of *Crane v. Giles*, 3 Kas., 54; *Logan Branch Bank, ex parte*, 1 Ohio St., 432.

It is not sufficient then that there has been a decision; but there must have been a decision "by a court," "clothed with judicial authority, and acting in a judicial capacity." The tribunal from which an appeal lies need not be called a court, but it must be one having the attributes of a court; a tribunal where justice is judicially administered, that is, according to law. "It is emphatically the province and duty of the judicial department to say what the law is," is the language of Judge MARSHALL in the case of *Marbury v. Madison*. The ascertainment of facts is only an incident to the duties of courts, as a necessary pre-requisite to the application of the law. Did the board of county clerks form "a court," or tribunal, in this sense of the term? Could that board finally render a decision that should be binding and conclusive on all the world, until reversed or set aside, according to the principles and usages of law? If not, then they lacked one of the essential attributes of a court. If a judicial tribunal decides a cause between parties, the legislature cannot open it, and give a new trial; but if, after this board had performed their duty, and had adjourned, the legislature should be called together and should prescribe another method of ascertaining the valuation of the property for the current year, the decision of this board would go for

nothing; would in effect be annulled by legislative action; 3. POWER TO TAX —legislative, not judicial: and this result indicates the character of the board. The raising of money for the support of government is essentially a legislative function. Where the money is raised by taxation, an ascertainment of the value of the property is a necessary prerequisite, and therefore an incident to the power to tax. It would be competent for the legislature to appoint commissioners for this purpose who should report directly to the legislature, who could revise and correct such valuation. That the inconvenience of such a mode would preclude its adoption, is no argument against the power. The power exists, and is a legislative power, and shows conclusively that it cannot be a judicial power. The two are separate and distinct departments of government, each having its appropriate sphere of action, and each clothed with powers to execute the duties pertaining to its own functions; and when each confines itself within the sphere of its constitutional power there is less danger of that peril pointed out by an eminent jurist when he says in reference to this matter: " There is an inherent and eternal difficulty in confining power of any kind within its proper limits. This general rule holds eminently true in regard to legislative and judicial bodies."—(Sedg. on Cons. Law, 217.) The assessment of the property of the State, being then an incident to the taxing power, which is wholly legislative and not judicial, may well be ascertained by agents appointed under the law; but in no sense under our constitution can such agents be considered judicial officers. It is true, that their duties require of them judgment and discretion; but this is also true of most of the duties of ministerial and executive officers, but this does not make them judicial officers, nor constitute them courts, or

render their conclusions judicial acts; and not being such, it follows from what has been heretofore said, that *5. Act of 1869—§11 unconstitutional.* there can be no appeal from the decision of such agents, to this court, and the duty imposed upon this court by the act of 1869 is one not permitted by the constitution, for it is not one of the enumerated cases in which the court has original jurisdiction, nor is it within the scope and meaning of the appellate jurisdiction which may be conferred upon the court.

The judicial power of the State is vested in courts by Article 3, Section 1, of the Constitution. If the acts of the assessor are in their nature judicial, then each assessor is a court from whose decision an appeal may be made to lie to this court; and a tribunal selected because of their supposed knowledge of the law may be made to perform duties which no previous preparation had qualified them to discharge, and after their decision had been made, the legislature might be convened, and their decision rendered a nullity by legislative action.

In Hayburn's case it was held a fatal objection to the jurisdiction of the circuit courts that their decision, if made, was open to revision by the secretary of war; Judges Iredell and Sitgreaves, in their letter to the President well observing, " that no decision of any court of the United States, can under any circumstances, in our opinion, agreeably to the constitution, be liable to a revision, or even suspension, by the legislature itself, in whom no judicial power of any kind appears to be vested, but the important one relative to impeachments;" and to the same effect were the letters of the other judges. (2 Dallas, 412.)

We have been referred to the case of *Weaver v. Devendorf and others*, 3 Denio, 120; and *Barhyte v. Shepherd*,

35 N. Y., 238, as announcing doctrines that would uphold the jurisdiction of this court in the matter before it. The decision of the first of these cases, rests on well known and long settled principles of law, that an officer to whom discretionary powers are confided, to be exercised as his best judgment shall determine, according to his own views of what is his duty, and keeping strictly within the line of his duties, is not liable in trespass for error of judgment in the performance of such duties. The decision, as was observed by the judge delivering the opinion of the court, might well be made on the ground above stated; but the learned judge delivering the opinion went much further, and declared the action of the assessors was purely judicial in its nature. We doubt whether the nature of the acts was correctly defined. In *Easton v. Callender*, 11 Wend., 92, Mr. Justice NELSON much more accurately defines the duties of assessors in valuing property as *quasi* judicial. If the word "judicial" was used in that case in the sense in which it is used in our constitution, we have no doubt it was erroneously used. These observations apply to the case in 35 N. Y., 238. The *decisions* seem correct. The *reasoning* is most unsatisfactory, as it would make every act of an executive officer, or member of the legislature, requiring the exercise of judgment and discretion, a judicial act. It certainly could not be so, in the sense in which our constitution uses the term, or it would of necessity obliterate the lines by which the framers of that instrument sought to keep separate and distinct, the three branches of our government.

We are constrained to think that no jurisdiction of the character of that involved in this appeal, can be conferred

upon this court without a manifest infringement of the constitution. The appeal must therefore be dismissed.

All the Justices concurring.