NOT DESIGNATED FOR PUBLICATION

No. 123,259

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARREL G. DEERE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed May 6, 2022.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

PER CURIAM: Darrel G. Deere appeals his convictions for one count of felony
fleeing or attempting to elude a law enforcement officer, one count of felony interference
with a law enforcement officer, two counts of misdemeanor assault on a law enforcement
officer, and two counts of failure to signal a turn. Deere contends the district court erred
in failing to properly instruct the jury about the various charges alleged by the State.
Deere also contends that his conviction for fleeing or attempting to elude a law
enforcement officer is multiplicitous and that the prosecutor misstated the law during
closing argument. Finally, he contends that he did not receive a fair trial because of

1

cumulative error. Based on our review of the record on appeal, we find no reversible error. Thus, we affirm Deere's convictions.

## FACTS

On the evening of January 3, 2019, Wichita Police Department Officers Jess Bernard and Robert Thatcher—both in full uniform displaying a badge logo and in a well-marked patrol vehicle with lights and sirens—were monitoring a vehicle with a Missouri license plate for a possible tag violation. When the vehicle did not move for some time, the officers resumed their patrol. Later that evening, they spotted a vehicle they believed to be the one that they were previously monitoring—a maroon Saturn sedan—as it turned in front of them onto Pawnee Street and started travelling westbound. Officer Bernard turned the patrol vehicle around and followed the Saturn as it accelerated and turned south onto Seneca Street.

As the officers followed the Saturn onto Seneca Street, the driver—later identified as Deere—failed to signal before turning east onto Savannah Street. After observing the traffic violation, Officer Bernard activated the emergency lights and siren on the patrol vehicle to initiate a traffic stop. Deere then accelerated and turned north onto Osage Street, once again without using his turn signal. As Deere approached Pawnee Street, he failed to stop at a stop sign and failed to signal before turning east.

At that point, two other uniformed Wichita police officers—Officers Kyle Perry and Christopher Ronen—took over the lead of the pursuit in their marked patrol vehicle with their lights and sirens on. The officers were also both equipped with Axon body cameras that captured the pursuit. The State would later introduce the footage from the body cameras into evidence at trial.

After Officers Perry and Ronen took over the pursuit, Deere once again failed to use his turn signal as he turned north onto McClean Boulevard. While travelling on McClean Boulevard, the officers estimated the Saturn's speed to be approximately 70 miles per hour in a 40 or 45 mile-per-hour zone. Meanwhile, Officer Steven McKenna—who was positioned ahead of the pursuit—tried to deploy "stop sticks" at the intersection of McLean Boulevard and Lincoln Street. However, Deere veered into oncoming lanes of traffic and avoided the tire deflation device.

After avoiding the stop sticks, Deere ran a stoplight and failed to signal as he turned west. He again failed to signal before turning north onto Osage Street. Next, Deere ran a stop sign before turning back to the west on Dayton Street through a residential neighborhood. At that point, the Saturn was travelling around 40 to 50 miles per hour in a 30 mile-per-hour zone. During the pursuit by the police, the officers observed the Saturn bottoming out at times and sparks flying from underneath the car.

Deere ran a stop sign while crossing Seneca Street and nearly hit a truck in the intersection. Deere ran another stop sign before turning south on Vine Street without using a turn signal. He then ran yet another stop sign before crossing over McCormick Street. Deere then ran another stop sign as he turned west onto Walker Street and struck a curb as he turned. Next, Deere turned north onto Hiram Street. The officers were finally able to catch up with the Saturn as it started losing air in its tires after hitting the curb. Finally, Deere turned east onto Irving Street without using a turn signal, crossing Glenn Street, and entering a dead-end street before coming to a stop.

After Officer Ronen parked the patrol vehicle he was driving behind the Saturn, Officer Perry exited the vehicle and positioned himself behind the passenger door with his gun drawn. Suddenly, Deere revved the engine of the Saturn, shifted into reverse, and struck the front of the patrol vehicle. Officer Perry jumped out of the way and would testify at trial that he feared that he would be knocked to the ground, run over, and killed.

Likewise, Officer Ronen would testify at trial that he was scared for Officer Perry and was also concerned that Deere's car might "ramp up on top of my car and crush me and hurt me . . . ." Deere then shifted the Saturn back into drive and accelerated forward until the car struck a fence and came to a stop. At trial, evidence would be presented that the impact from the collision caused $538.60 in damage to the patrol vehicle and that hitting the fence caused $265 in damage.

After coming to a stop for a second time, Deere exited the vehicle and ran to the north. Officers Perry and Ronen gave chase on foot and commanded that Deere stop. Following a short chase, Deere was taken into custody. A passenger—who was later identified to be Deere's girlfriend—had remained in the car throughout the police pursuit and foot chase. During a search of the Saturn, Officer Bernard recovered a black metal hatchet and Deere later stipulated at trial to having a prior felony conviction that prohibited him from possessing a weapon.

During a post-Miranda interview with Officer Perry, Deere admitted that he knew the officers were pursuing him early in the pursuit. But Deere claimed that he had not seen the stop sticks because he was already swerving to negotiate a turn onto Lincoln Street. Deere also claimed that he did not mean to ram the Saturn into the police vehicle after he was initially stopped. Instead, he stated that he had mistakenly put the car into the wrong gear.

Based on these events, the State charged Deere with two counts of aggravated assault on a law enforcement officer and two counts of felony fleeing and eluding; one count each of felony interference with law enforcement for fleeing on foot, criminal possession of a weapon, criminal damage to the police car, and criminal damage to the fence; and two counts of failure to signal turns. The district court conducted a jury trial from September 30, 2019, to October 3, 2019. At trial, several police officers testified about what they observed during the pursuit. Additionally, the State introduced 29

4

exhibits into evidence. The exhibits included footage of the pursuit taken from dashboard and body cameras.

Deere testified in his own defense at trial. Although he admitted that he was the driver of the Saturn that fled from the police, he claimed that he did not initially realize that they were trying to pull him over. According to Deere, once he realized the police were trying to pull him over, he was scared and hit the accelerator in an attempt to avoid going to jail. Deere also admitted that the lights and sirens of the patrol vehicles were on as he tried to get away.

During his testimony, Deere admitted to running several stop signs and at least one stoplight. Moreover, he admitted to speeding and failing to use his turn signal when making turns. Deere testified that he only stopped after he hit a curb and his tires started to deflate. Although Deere did not deny striking the patrol vehicle with the Saturn he was driving, he claimed that he accidentally bumped the gear shift into reverse as he leaned over to kiss his girlfriend.

After considering the evidence and the instructions given by the district court, the jury convicted Deere of two counts of misdemeanor assault on a law enforcement officer—which had been given as lesser-included offenses, one count of felony fleeing or eluding a law enforcement officer based on committing five or more moving violations during the police pursuit, one count of felony interference with a law enforcement officer, one count of criminal damage relating to hitting the fence, and two counts of failure to signal turns. The jury acquitted Deere of one count of felony fleeing or eluding a law enforcement officer based on causing intentional damage during a police pursuit, one count of criminal damage to the police vehicle, and one count of criminal possession of a weapon. The district court subsequently denied a motion for a new trial or for judgment of acquittal filed by Deere following the trial.

5

The district court ultimately sentenced Deere to a controlling term of 22 months in prison—which included a 15-month prison sentence for felony fleeing and eluding a law enforcement officer and a consecutive 7-month prison sentence for felony interference with law enforcement. The district court ran the remaining misdemeanor sentences concurrent with the felony sentences. Thereafter, Deere filed a timely notice of appeal.

ANALYSIS

*Challenges to jury instructions*

Deere makes several challenges to the jury instructions. When reviewing challenges to jury instructions, an appellate court follows a multi-step process:

> "'First, it considers the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; next, it applies unlimited review to determine whether the instruction was legally appropriate; then, it determines whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and finally, if the district court erred, this court determines whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 [132 S. Ct. 1594, 182 L. Ed. 2d 205] (2012).' [Citation omitted.]" *State v. Owens*, 314 Kan. 210, 235, 496 P.3d 902 (2021).

Deere acknowledges that he failed to request the instructions that he now claims should have been given by the district court. Under these circumstances, we are only to find reversible error upon a showing of clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235. The party claiming a clearly erroneous instruction—in this case Deere—maintains the burden to establish the degree of prejudice necessary for reversal. *State v. Castleberry*, 301 Kan. 170, 180, 339 P.3d 795 (2014). The "'clearly erroneous'" principle is not a framework for determining whether error occurred but provides a basis for determining whether an error requires reversal of a conviction. *State v. Williams*, 295

6

Kan. 506, 510, 286 P.3d 195 (2012); see also *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

1. *Failure to give lesser-included offense instructions on misdemeanor fleeing or attempting to elude a law enforcement officer*

Deere first argues that the district court should have given a lesser included offense instruction for misdemeanor fleeing or attempting to elude a law enforcement officer. In response, the State argues that because the evidence of five or more underlying moving violations required for the felony conviction was "overwhelmingly clear," the lesser included instruction for misdemeanor fleeing and eluding a law enforcement officer was unnecessary. As indicated above, because Deere did not request this instruction, we review the failure to give it for clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235.

Our initial inquiry is whether the district court committed instructional error. Under the first step of the analysis, we first determine whether the lesser-included instruction was legally appropriate. A lesser-included offense includes a lesser degree of the crime charged. K.S.A. 2020 Supp. 21-5109(b)(l). "In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 2020 Supp. 22-3414(3). A lesser included offense instruction is legally appropriate when the lesser crime is an included offense of the crime charged, and it is factually appropriate when some evidence would reasonably justify convicting the defendant of the lesser included crime. K.S.A. 2020 Supp. 22-3414(3); *State v. Holley*, 313 Kan. 249, 255, 485 P.3d 614 (2021); *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014).

7

It is undisputed that misdemeanor fleeing and eluding a law enforcement officer is a lesser included offense of felony fleeing or attempting to elude a law enforcement officer. This is because all the elements of the misdemeanor offense are also elements of the felony offense. See K.S.A. 2020 Supp. 8-1568(a)-(b); K.S.A. 2020 Supp. 21-5109(b)(2). Accordingly, we find that a lesser included offense instruction of misdemeanor fleeing and attempting to elude a law enforcement officer was legally appropriate.

Turning to the second step of the analysis, we also find the facts support a lesser included offense instruction because the State presented evidence that met all the elements of misdemeanor fleeing and eluding a law enforcement officer. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *Holley*, 313 Kan. at 255. In this case, all the elements of misdemeanor fleeing or attempting to elude were met.

Even though the lesser-included offense instruction was legally and factually appropriate, Deere bears the burden of showing that the failure to give the instruction was clear error and not harmless error. See *Owens*, 314 Kan. at 235. In other words, Deere has the burden to show that the jury would have reached a different verdict if the error had not occurred. See *State v. Cooper*, 303 Kan. 764, 772, 366 P.3d 232 (2016). Based on our review of the record on appeal, we find that Deere has not met this burden.

Deere concedes that the State presented evidence of "several" traffic infractions. Still, he claims that it is unclear whether the jury found that Deere committed five or more offenses as specified in the instructions. He asserts that it is possible that the jury may not have found him guilty of the five or more traffic offenses in addition to the two failure to signal a turn offenses that were charged separately.

8

The record reflects that the district court instructed the jury regarding two types of speeding violations: "speeding: maximum speed limits" and "speeding: rules governing speed of vehicles." In addition, the district court instructed the jury on failure to obey a traffic-control signal and failure to obey a stop sign. The district court also defined each of these moving violations by its elements for the jury. The jury was instructed that the first type of speeding required that the State prove that Deere operated a vehicle "at a speed in excess of the maximum speed limit." In addition, the jury was instructed that it could find a moving violation for speeding if it found that Deere operated a vehicle "at a speed greater than reasonable and prudent under the conditions and without regard for the actual hazards then existing."

The record on appeal—including the officers' testimony as well as the video evidence presented to the jury—establishes that the State presented sufficient evidence that Deere committed five or more moving violations during the pursuit by police. In particular, we find sufficient evidence in the record to show that Deere committed speeding violations under both definitions. Additionally, Deere admitted at trial to running a stoplight, speeding, and running "a couple" of stop signs. In fact, a review of the video of the pursuit shows that Deere failed to obey a traffic-control signal at least once, that he failed to obey a stop sign at least five times during the pursuit, and committed several other traffic violations.

Deere also argues that "given [his] state of mind, one or more jurors could have formed a reasonable doubt about several of the . . . alleged traffic violations." However, traffic offenses are historically strict liability crimes in Kansas. As a result, a particular mental state is generally not required to show culpability. See K.S.A. 2020 Supp. 21-5203. Consequently, we find that the felony fleeing and eluding a law enforcement officer charge did not require the State to prove a specific state of mind to establish that Deere had committed five or more moving violations.

9

Looking at the totality of the evidence, we have no difficulty concluding that the State presented sufficient evidence of at least five moving violations to support Deere's conviction for felony fleeing and eluding a law enforcement officer. As discussed above, this evidence includes the video footage captured by dash cameras during the police pursuit. Even if speeding was not counted as more than one violation, the evidence in the record shows that Deere failed to stop at a stop sign on at least five occasions during the pursuit.

Furthermore, the record reflects that the district court appropriately instructed the jury regarding the type of traffic offenses that could be considered in determining whether Deere committed five or more moving violations. On appeal, we presume that the jury followed the instructions given by the district court. *State v. Hillard*, 313 Kan. 830, 845, 491 P.3d 1223 (2021); *State v. Thurber*, 308 Kan. 140, 194, 420 P.3d 389 (2018). Under the circumstances presented, we do not find that the jury would have reached a different result if the district court had given the lesser-included offense instruction at the trial of this case. Therefore, we conclude that it was not clearly erroneous for the district court to not provide the jury with the lesser-included instruction of misdemeanor fleeing or attempting to elude a law enforcement officer.

## 2. *Failure to instruct that the moving violations must occur during a police pursuit*

For his second instructional issue, Deere argues that the district court erred by failing to include an essential element of the crime of fleeing or attempting to elude a law enforcement officer when it did not instruct the jury that the moving violations occurred "during a police pursuit." To establish a violation of K.S.A. 2018 Supp. 8-1568(b)(1)(E), the State had to prove that Deere committed five or more moving violations during a pursuit by the police. Deere argues that he also committed offenses prior to the police pursuit, and that the jury should have been instructed to only consider those moving violations that occurred after the police attempted to stop the vehicle he was driving. In

10

response, the State argues that when the jury instructions are read as a whole, it is apparent that the moving violations had to occur after a driver is given a visual or audible signal to bring the motor vehicle to a stop.

Once again, Deere acknowledges that he did not request that the district court add the language to the proposed jury instruction. So, he has the burden to show that the district court committed clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235. A review of the record shows that Instruction No. 11—which was given by the district court and provided the required elements of fleeing and attempting to elude a law enforcement officer to the jury—was based on PIK Crim. 4th 66.110 (2014 Supp.). The Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). Here, it is important to recognize that the recommended PIK instruction does not include the additional language suggested by Deere. See PIK Crim. 4th 66.110.

Instruction No. 11 as given by the district court provided:

"l. The defendant was driving a motor vehicle.
"2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.
"3. The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.
"4. The police officer's vehicle, from which the signal to stop was given, was appropriately marked showing it to be an official police vehicle.
"5. The defendant committed five or more moving violations:  speeding: maximum speed limits; speeding:  rules governing speed of vehicles; failure to obey a traffic-control signal; failure to obey a stop sign.
"6. This act occurred on or about the 3rd day of January, 2019, in Sedgwick County, Kansas."

11

So, the district court's instruction is nearly identical to the one recommended in PIK Crim. 4th 66.110. However, the district court modified the fifth element to include the types of traffic offenses that the jury could consider in determining whether Deere committed five or more traffic offenses. We find this modification to be appropriate considering the facts of this case. Although Deere suggests that the jury may have been confused because the officers were investigating a possible tag violation before attempting to initiate the traffic stop and he failed to signal a turn immediately prior to the initiation of the police pursuit, neither of these offenses were included in Instruction No. 11 as the type that could be considered in determining whether Deere had committed five or more moving violations during the police pursuit.

Of course, jury instructions should be considered as a whole to determine whether they properly and fairly state the applicable law and whether the jury could have been misled by them. See *State v. Dupree*, 304 Kan. 377, 394, 373 P.3d 811 (2016). When the jury instructions in this case are read as a whole, it is evident that the State had the burden to prove that Deere committed five or more moving violations of the type described in Instruction No. 11 after "[t]he defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop." Furthermore, a review of the record reveals that the moving violations relied on by the State to meet its burden all occurred after the police officers attempted to stop the vehicle that Deere was driving.

We also find that the sequential order of the sections of Instruction No. 11 was sufficient to inform the jury that it must find that the five or more moving violations occurred after the officers signaled for Deere to bring the vehicle he was driving to a stop. We note that this court has previously rejected the argument that failure to include the words "during a police pursuit" constitutes reversible error. See *State v. Powell*, No. 117,914, 2019 WL 5849831, at *8 (Kan. App. 2019) (unpublished opinion); *State v. Gilmore*, No. 110,833, 2015 WL 4366429, at *3 (Kan. App. 2015) (unpublished opinion). Thus, we conclude that he has failed to show clear error, and reversal is not required.

12

*3. Failure to instruct regarding the culpable mental state for each of the moving violations*

Next, Deere argues that the district court erred by failing to instruct the jury as to the culpable mental state for each of the moving violations he committed while fleeing or attempting to elude the police. In response, the State argues that the moving violations on which it based its charge are strict liability offenses and, as a result, no instruction about Deere's mental state was required. Again, Deere acknowledges that he did not request an instruction regarding his mental state. As a result, reversal of his conviction is only required upon a showing of clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235.

As discussed above, the district court instructed the jury regarding several potential moving violations, including two types of speeding violations, failure to stop at a traffic-control signal, and failure to obey a stop sign. None of these traffic offenses are of the nature that would require a culpable mental state to be proven. In Kansas, traffic offenses have historically been considered to be absolute liability offenses. As our Supreme Court found in *State v. Lewis*, 263 Kan. 843, Syl. ¶ 5, 953 P.2d 1016 (1998), "[a] person may be guilty of an offense without having criminal intent if the crime is a . . . traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

When *Lewis* was decided, K.S.A. 1997 Supp. 21-3204 also provided: "A person may be guilty of an offense without having criminal intent if the crime is . . . a traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." In 2011, K.S.A. 21-3204 was repealed and replaced with K.S.A. 21-5203. Like its predecessor, K.S.A. 2020 Supp. 21-5203 states: "A person may be guilty of a crime without having a culpable mental state if the crime is: (a) A misdemeanor, cigarette or tobacco infraction or *traffic infraction* and

13

the statute defining the crime clearly indicates a legislative purpose to impose absolute liability for the conduct described . . . ."

We pause to note that the Kansas Legislature recodified the Kansas Criminal Code in 2011 and provided a new scheme related to culpable mental states. Deere argues that this new scheme—in particular K.S.A. 2020 Supp. 21-5202—places a requirement on the Kansas Legislature to affirmatively state that an offense does not require a mental state for it to remain a strict liability crime. Nevertheless, the statutes setting forth the traffic offenses that Deere committed during the police pursuit—K.S.A. 2020 Supp. 8-1508(c), K.S.A. 8-1528, K.S.A. 8-1557, and K.S.A. 2020 Supp. 8-1558—have not been found by either the Kansas Supreme Court or our court to require a culpable mental state. Even though Deere makes a generalized argument that a mental state should be required where a statute has no explicit statement to the contrary, he provides us with no analysis regarding legislative intent behind the statutes at issue.

The question before us is whether the district court's failure to instruct the jury regarding a culpable mental state for these violations amounts to clear error. Deere asserts that had the jury been instructed to find at least a reckless mental state, there is a possibility the outcome would have been different on one or more of the alleged traffic violations. Nevertheless, based on our review of the record—especially Deere's own testimony—we find that the State presented sufficient evidence upon which a reasonable juror could find beyond a reasonable doubt that Deere's actions in fleeing from the police and committing numerous moving violations in the process were intentional. Specifically, Deere testified that he chose not to stop when the police attempted to initiate the traffic stop and instead tried to get away in an effort to avoid arrest. Likewise, the officers' testimony and the videotape evidence corroborate Deere's testimony that he acted intentionally to avoid being taken into custody. Of course, intentional conduct is the highest culpable mental state. K.S.A. 2020 Supp. 21-5202(b) and (c). Under these circumstances, we do not find that the jury would have reached a different verdict if the

14

jury had been instructed to find a culpable mental state associated with each of the moving violations committee by Deere during the police pursuit. For these reasons, we conclude Deere has failed to show clear error.

### 4. *Failure to give a lesser-included offense instruction of misdemeanor interference with a law enforcement officer*

Deere also argues that the district court erred by not instructing the jury on the lesser included offense of misdemeanor interference with a law enforcement officer. Since Deere did not request a jury instruction for the lesser included offense of misdemeanor interference with a law enforcement officer, Deere has the burden to show clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235. In response to Deere's argument, the State candidly concedes that misdemeanor interference with a law enforcement officer under K.S.A. 2020 Supp. 21-5904(a)(3), (b)(5)(B) can be a lesser included offense of felony interference with a law enforcement officer under K.S.A. 2020 Supp. 21-5904(a)(3), (b)(5)(A). See *State v. Hudson*, 261 Kan. 535, 536, 931 P.2d 679 (1997). However, the State argues that it is not appropriately considered as a lesser included offense under the facts of this case.

The classification of a charge of interference with a law enforcement officer as a felony or a misdemeanor depends on the officer's authority, knowledge, and intent. *Hudson*, 261 Kan. at 538. "The touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists, and not the status of the defendant. Thus, the [correct] classification under [K.S.A. 2020 Supp. 21-5904] depends on what the officer believed his duty to be as he discharged it." 261 Kan. at 538-39.

Deere suggests that the lesser included offense instruction is supported by the fact that the officers attempted to stop him for a misdemeanor traffic violation. But the

evidence in support of the felony interference with a law enforcement officer charge flows not from the initial attempt to stop Deere for a traffic infraction. Instead, the charge stems from Deere's decision to flee from the police on foot after he had initially stopped, backed into a police vehicle, and crashed into a fence.

Officer Perry testified that when Deere first came to a stop—unlike a "routine traffic stop"—he followed a specific procedure by exiting the patrol vehicle with his service weapon drawn to try and apprehend Deere in a "controlled and safe" manner. Likewise, Officer Perry testified that after Deere backed the Saturn into the police vehicle and attempted to drive away, they were conducting a felony car stop. To support the charge of felony interference with a law enforcement officer, the State presented evidence that both Officers Perry and Ronen believed they were apprehending Deere for a felony when he fled on foot after hitting the fence.

We find no evidence in the record to suggest that the interference charge here stemmed from Deere "knowingly obstructing, resisting or opposing" arrest for a misdemeanor or traffic infraction. Rather, we find that the evidence presented at trial supported the officers' belief that they were attempting to make a felony arrest when they pursued Deere on foot. As such, a lesser-included instruction for misdemeanor interference with law enforcement would not have been factually appropriate under the circumstances presented. See K.S.A. 2020 Supp. 22-3414(3). Thus, we conclude the district court properly instructed the jury regarding felony interference, and a lesser-included offense instruction for misdemeanor interference was not appropriate.

5. *Failure to instruct that the interference occurred in the case of a felony*

Deere's next claim of instructional error is based on his assertion that the district court erred by not instructing the jury that interference with law enforcement officer must occur "in the case of a felony." See K.S.A. 2020 Supp. 21-5904. Once again, Deere failed

16

to request that the district court add the words "in the case of a felony" to the interference with a law enforcement instruction. As such, reversal of his conviction is only required if Deere can show clear error. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235.

The jury was instructed that it could convict Deere of interference with a law enforcement officer if it found the following elements:

> "l. Kyle Perry and Christopher Ronen were discharging an official duty, namely arrest for fleeing or attempting to elude an officer.
> "2. The defendant knowingly resisted Kyle Perry and Christopher Ronen in discharging that official duty.
> "3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.
> "4. At the time the defendant knew or should have known that Kyle Perry and Christopher Ronen were law enforcement officers.
> "5. This act occurred on or about the 3rd day of January, 2019, in Sedgwick County, Kansas."

As we addressed previously, our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.' [Citation omitted.]" *Butler*, 307 Kan. at 847. Here, we find that the instruction given by the district court is consistent with PIK Crim. 4th 59.040 (2019 Supp.), which does not include the words "in the case of a felony." The Notes on Use for the PIK Instruction explain that "[i]nterference with law enforcement by obstructing official duty is a severity level 9, nonperson felony in the case of a felony, or resulting from parole or any authorized disposition for a felony." In addition, the comments to PIK Crim. 4th 59.040 cite to the holding in *Hudson* and note that the classification of the offense turns upon the knowledge and intent of the officer. See *Hudson*, 261 Kan. 535.

17

In Instruction No. 12, the district court instructed the jury that in order to convict for felony interference with a law enforcement officer, it had to find that "Kyle Perry and Christopher Ronen were discharging an official duty, namely arrest for fleeing or attempting to elude an officer." Although the words "in the case of a felony" would have been legally appropriate to add to the instruction, the evidence presented at trial supported a finding that Deere had committed a felony before attempting to escape on foot. Moreover, Deere presented no evidence to suggest that Officers Perry and Ronen subjectively believed they were pursuing an arrest for a misdemeanor at the time of the foot chase. See *Hudson*, 261 Kan. at 535. Hence, we conclude that the words "in the case of a felony" were not necessary under the circumstances presented and that the district court did not commit clear error.

6. *Failure to give a lesser-included offense instruction of simple assault*

Deere's final claim of instructional error is that the district court erred by failing to instruct the jury on the offense of simple assault as a lesser-included offense of assault of a law enforcement officer. Yet again, since Deere did not request a jury instruction for the lesser-included offense of simple assault, he has the burden to show clear error requiring reversal. See K.S.A. 2020 Supp. 22-3414(3); *Owens*, 314 Kan. at 235. Based on our review of the record on appeal, we find that he has not met his burden.

In Kansas, the offense of simple assault is defined by statute as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2020 Supp. 21-5412(a). The district court instructed the jurors as to the elements of aggravated assault of a law enforcement officer and the lesser included offense of assault of a law enforcement officer. Deere was found guilty of two counts of the lesser-included offense of assault of a law enforcement officer.

18

To find Deere guilty of assault of a law enforcement officer, the jury was instructed that it had to find:

"1. The defendant knowingly placed [Kyle Perry or Christopher Ronen] in reasonable apprehension of immediate bodily harm.
"2. [Kyle Perry or Christopher Ronen] was a uniformed or properly identified city law enforcement officer.
"3. [Kyle Perry or Christopher Ronen] was engaged in the performance of his duty.
"4. This act occurred on or about the 3rd day of January, 2019, in Sedgwick County, Kansas."

At trial, the State presented evidence that Officers Perry and Ronen were properly identified law enforcement officers engaged in the official performance of their duty when Deere backed into their marked patrol vehicle. Furthermore, Deere admitted that he was fleeing from the police to avoid arrest and detention. We find that this evidence excluded the possibility of Deere being guilty of the lesser-included offense of simple assault at the time of the collision. If the jury concluded an assault took place, then Deere was guilty of assaulting a law enforcement officer based on the evidence. As a result, we conclude that a jury instruction for simple assault was not factually appropriate based on the evidence presented at trial.

*Challenge to conviction as multiplicitous*

For the first time on appeal, Deere contends that his single conviction for fleeing or attempting to elude a law enforcement officer is multiplicitous. In support of this claim, Deere speculates that the jury may have counted a single moving violation for speeding as more than one moving violation in finding the five moving violations necessary to support his conviction. In response, the State maintains that a claim of multiplicity must necessarily involve two convictions, and Deere is only challenging one conviction as multiplicitous.

19

Generally, this court does not consider issues raised for the first time on appeal. *State v. Gonzalez*, 311 Kan. 281, 295, 460 P.3d 348 (2020). However, our Supreme Court has heard multiplicity issues for the first time on appeal under the exception for preventing the denial of fundamental rights. 311 Kan. at 295. An appellate court's review of multiplicity challenges is unlimited. 311 Kan. at 295. "The Double Jeopardy Clause prevents a defendant from being punished more than once for the same crime." 311 Kan. at 296. Multiplicity occurs when a single offense is charged as several offenses in a charging document. 311 Kan. at 296.

Here, the jury convicted Deere of one count of fleeing or attempting to elude a law enforcement officer. Deere argues that the underlying moving violations supporting the conviction make the single conviction multiplicitous. A similar multiplicity argument has previously been rejected by this court in *State v. Young*, No. 107,056, 2013 WL 4778148 (Kan. App. 2013) (unpublished opinion). In *Young*, the defendant argued that his felony fleeing or attempting to elude a law enforcement officer conviction was "multiplicitous because the elements of the offense were proved by multiple instances of two different moving violations." 2013 WL 4778148, at *6. In rejecting this argument, this court recognized that there could be no multiplicity when a defendant was convicted of one crime.

The *Young* panel explained:

"Moreover, his interpretation defeats the purpose of the felony fleeing or eluding statute, ostensibly designed to enhance public safety by deterring extended chases. If a car flees from police by running 20 stop signs in a row, Young argues this is only a single moving violation. Although appellate courts must strictly construe statutes in favor of the accused, judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012). Clearly, Young's argument lacks merit when multiple traffic violations occur. Each time a new stop sign is run, another violation occurs.

20

"According to the record and Young's stipulation at the bench trial, his behavior constituted at least five moving violations—failing to observe two stop signs and one traffic light, failing to yield to an emergency vehicle, and two speeding violations. He was found guilty at the bench trial. The single count of felony fleeing or attempting to elude a police officer by means of five or more moving violations is not multiplicitous—it is only one charge." *Young*, 2013 WL 4778148, at *6-7.

Subsequently, in *State v. Cruse*, No. 108,923, 2014 WL 1362647 (Kan. App. 2014) (unpublished opinion), this court again rejected a similar multiplicity argument. In *Cruse*, the defendant argued that multiple instances of unsafe turning and failing to signal a turn were multiplicitous. The *Cruise* panel found that the multiplicity analysis ends before it even begins when there is only one conviction at issue. The panel reasoned that a "single count of fleeing and eluding or attempting to elude a law enforcement officer by means of five or more moving violations is not multiplicitous—it is a single criminal act and is represented by only one charge and one conviction." 2014 WL 1362647, at *3. We agree with this analysis and conclude that there is no multiplicity issue when there is a single conviction.

Deere also suggests that his conviction for fleeing and eluding should be reversed based on *State v. Richardson*, 290 Kan. 176, 224 P.3d 553 (2010). But unlike *Richardson*, the district court in this case gave the jury much more extensive instructions regarding the types of moving violations that the State must prove to support the fleeing and eluding charge. The district court defined each type of moving violation for the jury. As such, we find that the jury was properly instructed in this case regarding the State's burden to establish that Deere committed five or more moving violations during the police pursuit.

*Prosecutorial Error*

Deere also contends that his conviction for fleeing or attempting to elude a law enforcement officer should be reversed because of prosecutorial error. In support of his argument, Deere points to a misstatement that the prosecutor made during closing argument. Deere asserts that the misstatement invited the jury "to convict [him] of felony fleeing and eluding based on moving violations that were not part of the instructions given to the jury."

We use a two-step process to evaluate claims of prosecutorial error:  error and prejudice. To determine whether prosecutorial error has occurred, we must first decide whether the prosecutorial acts fall outside the wide latitude afforded the prosecutor to conduct the State's case. If error is found, we must next determine whether the error prejudiced the defendant's due process rights to a fair trial. Prosecutorial error is harmless if the State can show there is no reasonable possibility that the error contributed to the verdict. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

A prosecutor commits error by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). When a misstatement of controlling law is made deliberately, it is outside the considerable latitude given to prosecutors during their arguments. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006). Here, the misstatement occurred when the prosecutor was reviewing the jury instructions and the evidence she believed supported each charge.

When the prosecutor came to Instruction No 11, she argued:

> "Instruction No. 11. This goes to Count 4 with flee an[d] elude with five or more moving violations. So the elements here are similar to that of Instruction 10 but a little bit different. Similar in that the defendant's driving. Defendant's given the visual and audible

22

signal by law enforcement to stop, that the defendant fails to make the stop, that it is a marked patrol vehicle. All of those things being the same as the prior one.

"But here's where it's different: That the defendant committed five or more moving violations, those being speeding, going excessive speed limits, failing to obey the traffic control signals, failing to obey a stop sign.

"There was testimony from a number of different officers of all the traffic violations that the defendant committed; that the defendant, himself, admitted that he ran stop signs, that he ran stoplights, *that he made turns without turning on his signal.* There's plenty of evidence to find five or more of those moving violations." (Emphasis added.)

So, the record reflects that the prosecutor initially correctly stated what moving violations the jury could consider as part of the five or more moving violations. However, the prosecutor then mistakenly included the failure to turn violations when speaking about the evidence she believed supported five or more moving violations. It appears from the record that the misstatement was isolated and not repeated. Likewise, it appears that the misstatement was not made intentionally to mislead the jury. Even so, it was erroneous.

Because the prosecutor erred, we must turn to the question of whether the error was harmless beyond a reasonable doubt under the standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). In making this determination, we view the isolated misstatement in the light of the entire record. We also presume that the jury followed the instructions given by the district court. *Hillard*, 313 Kan. at 845. Here, we find that the district court appropriately instructed the jury as to the types of moving violations that could be considered in reviewing the fleeing and eluding charge. In addition, the district court instructed the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded."

23

Furthermore, a review of the record reveals that the State presented overwhelming evidence of five or more moving violations that did not include failure to signal a turn. This evidence included Deere's own admissions, the testimony of several police officers, and video evidence depicting numerous moving violations committed after the pursuit began. Consequently, when we consider the entire record, we find no reasonable possibility that the isolated misstatement by the prosecutor contributed to the verdict or denied Deere the right to a fair trial. *Sherman*, 305 Kan. at 109.

*Cumulative Error*

Finally, Deere argues that cumulative error requires reversal of his convictions. In some cases, the cumulative effect of errors at trial may indeed require reversal of the defendant's conviction. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In considering whether cumulative error requires reversal, we consider whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial.

When the evidence in support of a conviction is overwhelming, the defendant cannot establish prejudicial error. 310 Kan. at 345-46. Moreover, reversal is not warranted if there has been no error or only one error at trial. See *State v. Bowser*, 312 Kan. 289, 308-09, 474 P.3d 744 (2020). Having found only one error in this case, we find no cumulative error.

In conclusion, based on our review of the record on appeal, we find that the evidence presented by the State at trial was overwhelming. We also find that Deere received a fair trial. We, therefore, affirm his convictions.

Affirmed.